CITY OF DEARBORN *v.* MICHIGAN TURNPIKE AUTHORITY.

1. DISMISSAL AND NONSUIT—RES JUDICATA.

A discontinuance, whether voluntary or under order of the court, is not *res judicata* as to the matters contained in the declaration and, while the plaintiff has his right in court, the defendant has an equal right to a determination of the allegations made against him (Court Rule No 38 [1945]).

2. SAME—DISCRETION OF COURT.

The granting or the refusal of leave to dismiss, discontinue or to take a nonsuit is a matter resting in the discretion of the trial court, which discretion is to be exercised with reference to the rights of both the parties (Court Rule No 38 [1945]).

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Dismissal, Discontinuance and Nonsuit § 77 *et seq.*
[1] Provision that judgment is "without prejudice" or "with prejudice" as affecting its operation as *res judicata.* 149 ALR 553.
[2, 4] 17 Am Jur, Dismissal, Discontinuance and Nonsuit § 6 *et seq.*
[2–4] Stage of trial at which plaintiff may take voluntary nonsuit, dismissal, or discontinuance. 89 ALR 13; 126 ALR 284.
[3] 17 Am Jur, Dismissal, Discontinuance and Nonsuit § 13 *et seq.*
[5] 50 Am Jur, Stipulations §§ 9, 17.
[6] See, generally, 25 Am Jur, Highways §§ 54, 55, 254.
[7] 54 Am Jur, Turnpikes and Toll Roads § 4.
[8, 9] 25 Am Jur, Highways § 255.
[10] See, generally, 25 Am Jur, Highways § 105 *et seq.*
[11] 10 Am Jur, Civil Service § 13.
[13] 42 Am Jur, Public Funds § 6; 54 Am Jur, Turnpikes and Toll Roads § 4.
[14, 15] 50 Am Jur, Statutes § 165 *et seq.*

3. SAME—DECLARATION OF RIGHTS—INJUNCTION—STIPULATIONS.

Plaintiff city's motion to discontinue suit for declaration of rights and for an injunction restraining defendant turnpike authority from acquiring property within the city for a turnpike highway was properly denied by trial court, where motion was filed after a number of pretrial conferences had been had and a stipulation of facts and issues had been filed, the matter involved was of State-wide public interest and defendant did not consent to the discontinuance (Court Rule No 38 [1945]).

4. CONTINUANCE—DISCRETION OF COURT—APPEAL FROM ORDER DENYING DISCONTINUANCE.

Trial court's denial of continuance in order to enable plaintiff city to appeal from order denying plaintiff's motion to discontinue the suit for declaration of rights and for injunction restraining defendant turnpike authority from acquiring property within plaintiff city *held*, not to constitute an abuse of discretion or reversible error (Court Rule No 38 [1945]).

5. JUDGMENT—STIPULATIONS—ABSENCE OF TESTIMONY.

The trial court was justified in proceeding to a final opinion and decree, and a declaration of rights and determination as to whether plaintiff should be granted injunctive relief, notwithstanding the absence of testimony, where there was an extensive stipulation of facts, disputed facts were set forth in the stipulation and plaintiff declined to avail itself of the opportunity afforded it to offer testimony.

6. HIGHWAYS AND STREETS—IMPROVEMENT—GENERAL PUBLIC INTEREST.

The improvement of highways for public travel is not to be regarded as solely and exclusively a matter of local concern, but of general public interest and State-wide importance, especially since the automobile has come into general use.

---

[16] See, generally, 50 Am Jur, Statutes § 49 *et seq.*; 54 Am Jur, Turnpikes and Toll Roads § 4.
[17] 54 Am Jur, Turnpikes and Toll Roads § 4; 56 Am Jur, Waters § 218 *et seq.*
[18] 18 Am Jur, Eminent Domain § 337.
[19] 11 Am Jur, Constitutional Law § 180 *et seq.*; 54 Am Jur, Turnpikes and Toll Roads § 4.
[20] 54 Am Jur, Turnpikes and Toll Roads § 4.
[21] 11 Am Jur, Constitutional Law § 206; 54 Am Jur, Turnpikes and Toll Roads § 4.
[22–24] 11 Am Jur, Constitutional Law § 232 *et seq.*
[25] 18 Am Jur, Eminent Domain § 36 *et seq.*
[26] 54 Am Jur, Turnpikes and Toll Roads § 4.
[27] 14 Am Jur, Costs §§ 37, 91.

**7. SAME—HOME RULE—CONSTITUTIONAL LAW.**

The turnpike act does not violate the provisions as to home rule, contained in the Constitution, but is rather in pursuance of the provision authorizing the legislature, by general law, to authorize the laying out, construction, improvement and maintenance of highways, bridges and culverts by State, counties, townships and road districts (Const 1908, art 8, § 26).

**8. SAME—MUNICIPAL CORPORATIONS—REASONABLE CONTROL.**

The right to the reasonable control of streets, alleys and public places reserved by the Constitution to cities, villages and townships is not a gift of an arbitrary prerogative to such municipalities, as the reasonableness may be determined in accordance with the State legislature's interpretation provided it can be approved by the court, and while interpretation can give rise to a justiciable question, the court would not ordinarily substitute its judgment for that of a city as to the control of its streets (Const 1908, art 8, §§ 27, 28; PA 1953, No 176, §§ 4, 5, 7).

**9. SAME—MUNICIPAL CORPORATIONS—REASONABLE CONTROL—VACATION OR ALTERATION.**

The provisions of the Constitution reserving to cities, villages and townships the reasonable control of streets, alleys and public places and prohibiting the legislature from vacating or altering them are limited to roads, streets, alleys or public places laid out, established or *in esse* at the time of any attempt to vacate or alter them through direct or indirect legislative action (Const 1908, art 8, §§ 27, 28).

**10. TURNPIKES AND TOLL ROADS—MUNICIPAL CORPORATIONS—CONSENT TO ALTERATION.**

A turnpike authority must obtain the consent of a city or village before changing, widening or altering any established streets or highways within the municipality other than streets or highways not controlled by the municipality, such as trunkline highways (Const 1908, art 8, §§ 27, 28; CL 1948, § 213.171 [i]; PA 1953, No 176, §§ 4, 5, 7).

**11. SAME—TURNPIKE AUTHORITY—AGENT OF STATE—CIVIL SERVICE—ACCOUNTS.**

A turnpike authority which is vested under the general police powers of the State with the duty of providing a type of highway for the State and which does not pledge the full faith and credit of the government nor support its activities by taxes is not an alter ego of the State but an agent of the State existing separately from it, hence, its employees are not subject to the civil service provisions of the Constitution nor are its accounts subject to the general accounting laws

of the State (Const 1908, art 6, § 22; art 10, § 18; PA 1953, No 176, § 4 [1], § 13).

12. HIGHWAYS AND STREETS—LEGISLATURE—POLICE POWER.

The legislature, in the exercise of its general police powers of the State, may choose from many different methods to provide for highways.

13. STATES—GRANT OF CREDIT—APPROPRIATION FOR REVOLVING FUND FOR TURNPIKE AUTHORITY.

An appropriation establishing a revolving fund for use of a turnpike authority in planning toll roads does not constitute a grant of the credit of the State contrary to prohibition in the Constitution (Const 1908, art 10, § 12; PA 1953, No 176, § 19).

14. STATUTES—TITLE OF ACT NEED NOT BE A COMPLETE INDEX.

The title of an act need not constitute a complete index of the statute, it being sufficient if it clearly expresses the subject matter and conveys it sufficiently (Const 1908, art 5, § 21).

15. SAME—TITLE OF ACT—TURNPIKE AUTHORITY ACT.

The title of the turnpike authority act *held*, sufficient to embrace all matters covered by specific provisions of the act relating to consent to use of streets, alleys and public places by invaded municipalities, civil service and State auditing and accounting requirements (Const 1908, art 5, § 21; art 6, § 22; art 8, §§ 27, 28; art 10, § 18; PA 1953, No 176, §§ 4, 5, 7, 13).

16. HIGHWAYS AND STREETS—TURNPIKE AUTHORITY—DISCRETION OF OFFICERS—SPECIAL ACTS.

Section of turnpike authority act which gave the authority discretion to construct highways in certain areas only if such project could be successfully financed and to determine whether there was an immediate need for a turnpike did not violate provisions of the Constitution prohibiting the legislature from passing a local or special act in any case where a general act could be made applicable (Const 1908, art 5, § 30; PA 1953, No 176, § 23).

17. SAME—TURNPIKE AUTHORITY—NAVIGABLE STREAMS—BRIDGES—CONSENT OF SUPERVISORS.

Provision of the turnpike authority act empowering the authority to construct bridges but not imposing upon it the acquisition of consent by the board of supervisors of the county as required by the Constitution is not unconstitutional, where there is no showing that the authority contemplates the construction of bridges over navigable streams which will interfere with the public's right of navigation (Const 1908, art 8, § 14; PA 1953, No. 176, § 2 [b]).

18. EMINENT DOMAIN—JURY TRIAL—TURNPIKE AUTHORITY—STATE PROJECT.

> It is not essential that trial by jury be had in condemnation proceedings instituted by a turnpike authority, as it is engaged in a State project (Const 1908, art 13, § 2; PA 1953, No 176, § 7).

19. CONSTITUTIONAL LAW—DIVISION OF POWERS—ADMINISTRATIVE DISCRETION—JUDICIARY.

> The grant of administrative discretion to a turnpike authority that is necessary to carry forward the purposes of the turnpike act does not offend the articles of the Constitution pertaining to the division of powers of government and establishing the judicial department (Const 1908, arts 4, 7; PA 1953, No 176, § 24).

20. BONDS—REVENUE BONDS—TURNPIKE AUTHORITY—GENERAL OBLIGATIONS OF STATES.

> Bonds to be issued by a turnpike authority pursuant to a statute providing they are to be payable solely from revenues do not constitute general obligations of the State, hence, are not subject to provisions of the Constitution limiting amount and restricting issuance of evidence of State indebtedness (Const 1908, art 10, §§ 10, 11; PA 1953, No 176, §§ 1, 11).

21. CONSTITUTIONAL LAW—DIVISION OF POWERS—TURNPIKE AUTHORITY—VALIDATION OF BONDS.

> The inclusion in the turnpike authority act of a permissive provision empowering the authority to institute a proceeding in the Ingham circuit court for the purpose of determining the validity of bonds it proposed to issue *held*, not an infringement by the legislative department upon the prerogatives of the judicial department, the advisability of such a law being a legislative question (Const 1908, art 4, § 2; PA 1953, No 176, § 22).

22. SAME—LEGISLATIVE POWER—TURNPIKE AUTHORITY—STANDARDS OF GUIDANCE.

> Statutory grants of power to turnpike authority to construct, maintain, repair, police and operate turnpike projects, to fix and revise toll charges, designate location and control ingress and egress and to construct only such as can be successfully financed, all of which were carefully limited by statement of purpose and prescribed procedure to be followed through annual reports and audits and promulgation of rules and regulations subject to statutory methods do not conflict with provisions of the Constitution as to delegation of legislative authority (Const 1908, art 5, § 1; PA 1953, No 176, §§ 4, 23).

23. SAME—DELEGATION OF POWER—STANDARDS OF GUIDANCE.

The legislature may make statutory grants of fact-finding powers and discretionary authority to an administrative body subject to sufficient standards for the guidance of the administrative unit (Const 1908, art 5, § 1).

24. SAME—COURTS—DISCRETION OF OFFICERS.

A court of equity will not interfere with the exercise of discretion vested in a public agency unless there has been a plain and palpable abuse of discretion.

25. EMINENT DOMAIN—TURNPIKE AUTHORITY—CONCESSIONAIRES TO PRIVATE PERSONS—STATUTES.

A legislative grant of power to a turnpike authority to acquire private property by purchase or condemnation and then empowering the authority, subject to certain statutory restrictions, to make contracts with private persons for concessionaires to service the travelling public was not in violation of the provision of the Constitution about taking private property for the public use, such concessionaires being incidental to the main purpose of the act and clearly within the legislative contemplation of service being best provided by private enterprise (Const 1908, art 13, § 1; PA 1953, No 176, §§ 4, 13, 17).

26. STATES—INTERNAL IMPROVEMENT—TURNPIKE—REVENUE BONDS.

A turnpike, built from proceeds of revenue bonds, is a self-liquidating project and is not a work of internal improvement prohibited by the Constitution (Const 1908, art 10, § 14; PA 1953, No 176).

27. COSTS—PUBLIC QUESTION—CONSTITUTIONAL LAW—TURNPIKE AUTHORITY.

No costs are allowed in suit to determine constitutionality of turnpike act, a public question being involved (Const 1908, art 4; art 5, §§ 1, 21, 30; art 6, § 22; art 7; art 8, §§ 14, 26, 27, 28; art 10, §§ 12, 18; art 13, § 1; PA 1953, No 176).

Appeal from Washtenaw; Breakey (James R., Jr.), J. Submitted October 11, 1955. (Docket No. 71, Calendar No. 46,622.) Decided December 1, 1955. Rehearing denied March 1, 1956.

Bill by the City of Dearborn, a municipal corporation, against the Michigan Turnpike Authority, a public benefit corporation, for declaration of rights

and an injunction restraining the acquisition of property and the construction of turnpike within corporate limits. Michigan Free Highways Protective Association, a Michigan nonprofit corporation, and certain members thereof intervened as parties plaintiff. Decree determining constitutionality of the turnpike act and denying injunctive relief. Plaintiffs appeal. Affirmed.

*Dale H. Fillmore,* Corporation Counsel, and *James A. Broderick,* Assistant Corporation Counsel, for plaintiff.

*George A. Kelly,* for intervening plaintiffs.

*Miller, Canfield, Paddock & Stone* (*Maxine Boord Virtue* and *Wood, King & Dawson,* of counsel), for defendant.

KELLY, J. Plaintiff and appellant city of Dearborn, a Michigan municipal corporation, on February 16, 1955, filed its bill of complaint seeking a declaration of rights and an injunction restraining defendant and appellee from acquiring property in the city of Dearborn for a turnpike highway. On March 8, 1955, the trial court granted the petition to intervene of the Michigan Free Highways Protective Association.

After numerous pretrial conferences a stipulation of facts and issues, signed by all parties, was filed on May 2, 1955. This stipulation set forth that the Authority was contemplating constructing a turnpike highway:

"Starting from connections with US Route 24 and the Monroe Expressway in the vicinity of Rockwood and extending northerly to the west of Detroit and to the east of Pontiac, thence northwesterly passing to the east of Flint to a terminal connection

with US Route 23, southeast of Saginaw, for a total distance of 115 miles, more or less * * * (otherwise known as the) North-South Turnpike—Initial Section."

It was also stipulated that:

"The North-South Turnpike—Initial Section will traverse the city of Dearborn as follows:

"From the Industrial Expressway Interchange the project will continue in a northerly direction over Rotunda drive, immediately east of the River Rouge, to the Michigan Central Railroad tracks, thence in a general westwardly direction over Southfield highway and thence in a general northwestwardly direction over the Michigan Central Railroad tracks and Michigan avenue about 3,300 feet west of Southfield highway, thence continuing northwardly, west of Fairlane, over Ford road, the Dearborn city-Dearborn township line. North of Ford road in Dearborn township an interchange will be provided connecting to Ford road."

The estimated construction cost for said turnpike highway is set forth in the stipulation as being between $186,000,000 and $191,000,000, said construction cost to be financed by revenue bonds. The parties to this litigation agreed that:

"It is the intent of the Authority to proceed with the sale of such bonds, the acquisition by purchase or condemnation of the necessary rights-of-way, and the construction of said North-South Turnpike—Initial Section forthwith upon the final disposition of this litigation."

On the date designated for trial, namely, June 8, 1955, plaintiff filed a motion to discontinue, setting forth 2 main reasons for discontinuance: (1) That a change in the personnel of the Authority gave the city hopes that the difference between the city and the Authority could be eliminated; and (2)

That the city had grave doubts that its action had not been prematurely instituted due to the fact that the Authority had not made a final decision as to the route of the turnpike.

Both defendant and intervenor objected to the motion for discontinuance and, after argument, same was denied. The plaintiff then requested a continuance of the trial so that an appeal could be taken from its motion to discontinue, and the court refused this motion. Plaintiff then declined to offer testimony and neither defendant nor intervening plaintiff offered testimony.

1. The first 4 questions presented to this Court in this appeal can be consolidated into the following single question: Did the court err in denying both the motion to discontinue and the request to continue and making a determination without proofs being taken?

The stipulation filed in this cause established that the Authority had retained 2 nationally-known and recognized traffic engineering firms, of New York City and Baltimore, both of which firms were qualified as specialists in the traffic study field; that after 9 months of study these 2 engineering firms reported to the Authority on the results of their studies, and on September 28, 1954, the reports of said engineering firms were received and accepted by a resolution of the Authority. Further, financial advisers of New York City and Detroit recommended to the Authority that the project could be financed by the issuance and sale of turnpike revenue bonds; that bond counsel and financial advisers of the Authority were directed by the Authority to prepare the necessary trust indenture, bond resolution, and other legal documents necessary to effect a sale of the revenue bonds to provide funds to finance the north-south turnpike. On April 7, 1955, the final traffic reports substantiating the previous

preliminary reports were filed by the consulting engineers, and at a meeting held on November 3d, the Authority directed its bond counsel and financial advisers to take the necessary steps under the provisions of the turnpike act to obtain the requisite approval of the State administrative board and negotiate a sale of turnpike revenue bonds in an amount sufficient to finance the construction of said north-south turnpike.

The stipulation of facts and issues agreed upon and signed by all the parties to this action, including the plaintiff city of Dearborn, contained under the title "The Disputed Facts are These," the following:

"A. That the proposed turnpike will necessitate the vacation, change, relocation, widening or alteration of existing streets, alleys and public grounds in the city of Dearborn.

"B. That the proposed turnpike will prevent plaintiff from furnishing adequate police and fire protection to all sections of the city.

"C. That because of the proposed turnpike plaintiff will be unable to carry out its proposed flood control program along the Rouge river.

"Defendant denies that any of the above results will be caused by the construction of its proposed turnpike, and are of no consequence to the determination of the issues involved."

In 1945 this Court adopted Court Rule No 38 allowing the plaintiff to discontinue after answer filed on "the order of the court or judge made on special motion in which the grounds for such discontinuance shall be set forth and which shall be supported by affidavit." While there are no Michigan cases construing the 1945 amendment to the rule, it is important to note that the portion of the rule raised in the present case is identical with Rule No 38 as it existed in 1931. This Court was asked to construe this rule in *Pear* v. *Graham,* 258 Mich

161.   In the *Pear Case,* 2 days before the case was reached for trial, plaintiff filed a motion to dismiss the case because an indispensable witness could not be presented to testify.   In denying the motion the circuit judge said (pp 163, 164):

" 'A discontinuance, whether it be voluntary or under the order of the court, as I understand it, is not *res judicata* as to the matters contained in the declaration, and another suit might be commenced upon the same claimed state of facts.   *   *   *   While the plaintiff has his right in court, of course, yet the defendant, in this sort of a case, has an equal right to a determination of the allegations made against him.   *   *   *   Therefore the motion to discontinue will be denied.' "

This Court sustained the trial court, stating:

" 'It is considered that the granting or the refusal of leave to dismiss, to discontinue, or to take a nonsuit is a matter of practice resting in the discretion of the court, which discretion is to be exercised with reference to the rights of both the parties.'   14 Cyc, p 396, and 18 CJ, p 1150, citing many cases."

In the present case the trial court in denying the motion to discontinue stated:

"Inasmuch as a great public question is involved, if we assume that the status of the cause is that the defense has already entered on its proofs, the court is inclined to deny and would deny and does deny the motion.   The court, however, is of the opinion that we do not have here a mere motion to discontinue prior to the commencement of trial. In this case, we have had a number of pretrial conferences and as a result of those conferences in this court which is a court with a pretrial docket having local court rules establishing and governing its pretrial docket, and thereby placing this court in the category of courts with a pretrial docket under the

Michigan Court Rules, it is, therefore, significant and controlling that the stipulation of facts and issues during the pretrial proceedings has been filed. It was arranged that today we would supplement, or permit the plaintiff to supplement, and the defendant to supplement, the proofs as stipulated in the said stipulation.

"Therefore, it seems we have passed beyond the stage of the opening of trial or a mere showing of plaintiff's cause of action. We'll pass over into the second phase for the defendant to make some showing. At least, that would seem to appear as a proper interpretation of the stipulation of facts and issues as it now is before the court.

"Since both parties are municipal or State authorities, since the pleadings on their face show a very serious, grave and State-wide public interest is involved, and since the defendants do not consent to the discontinuance, the court's holding is that the motion to discontinue be and is hereby denied."

It is this Court's opinion that the trial court did not err in denying plaintiff-appellant's motion to discontinue.

After plaintiff-appellant's motion to discontinue was denied, plaintiff requested a continuance to enable it to take an appeal to this Court from the denial of its motion. The lower court denied this motion and ordered the trial to proceed. In its brief, plaintiff-appellant complains of this denial for continuance, stating:

"Plaintiff took the position that if it continued with the trial of the case it would prejudice what it considered its clear right to discontinue. Accordingly, no proofs were offered either by the plaintiff, defendant or intervenors. Quite obviously a trial court has a great amount of discretion in the matter of granting a continuance of trial. Admittedly plaintiff's motion to discontinue was filed at a late hour. Nevertheless, plaintiff raised by its motion a

substantial legal question and was entitled to sufficient time to appeal the adverse ruling without prejudicing its ability to introduce testimony on the issues raised by the pleadings."

It is the opinion of this Court that the trial court's denial of continuance for an appeal did not constitute an abuse of discretion or reversible error.

Plaintiff-appellant contends that the court could not render an opinion and decree without testimony being taken.

As has been previously referred to in this opinion, a series of conferences between counsel representing plaintiff-appellant, plaintiff-intervenor, and defendant-appellee, resulted in an extensive stipulation of facts and issues. There is also set forth in the stipulation the disputed facts, with the denial by the defendant-appellee that the complained results will be caused by the construction of the proposed turnpike.

The city of Dearborn had the opportunity to offer testimony, but declined to offer such testimony.

From the record submitted in this case this Court holds that the trial court was justified in proceeding to a final opinion and decree, and a declaration of rights and determination as to whether plaintiff should be granted injunctive relief.

2. Four of plaintiff-appellant's questions and 6 of intervenor-appellant's questions, as set forth in their statements of questions involved, are based on the contention that the turnpike act* violates the constitutional provisions of home rule as provided for in article 8 of the Michigan Constitution (1908). In refuting this contention, defendant-appellee calls attention to the fact that article 8, § 26, provides that the legislature may by general law authorize the laying out, construction, improvement and main-

---

* PA 1953, No 176 (CLS 1954, §§ 252.101–252.126, Stat Ann 1953 Cum Supp §§ 9.1095 [1]–9.1095 [26]).—REPORTER.

tenance of highways, bridges and culverts by the State and by the counties and townships thereof and by road districts.

The State's interest in providing proper highways for travel in this State was commented upon by this Court in *Loomis* v. *Rogers,* 197 Mich 265, 276, wherein it was stated:

"While yet recognizing local interest in and a reasonable local control over highways, the present Constitution [1908] makes plain that their improvement for public travel is not to be regarded as solely and exclusively a matter of local concern, but of general public interest and State-wide importance."

Again, in *Attorney General* v. *Bruce,* 213 Mich 532, 550, this Court said:

" 'All of the highway legislation now on the statute books is based on the theory that the entire State is interested.' "

In *Moreton* v. *Secretary of State,* 240 Mich 584, 588, this Court commented upon the interest which the State at large has in all public roads, as follows:

"In determining this question, it will be helpful to keep in mind the interest which the State at large has in all public roads and the policy which it has adopted in respect to their construction and maintenance. If ever the building and maintenance of highways was a matter of purely local concern, that time passed with the coming of the automobile into general use as a means of transportation. Good roads became economically necessary. To secure them, the old local public road policy was abandoned; and by appropriate legislation there was adopted a complete and comprehensive State-wide system, the basic theory of which is that the building of a highway in any section of the State is of interest to every other section; that it is a matter of State-wide concern rather than of any particular locality."

The police power of the State and cities within the State was discussed in *Attorney General, ex rel. Lennane,* v. *City of Detroit,* 225 Mich 631, 638–641, as follows:

"The police power rests in the State. Neither the general language of   *   *   *   (home-rule act) nor any other provision of the home-rule act* delegates to municipalities the general exercise of all of such police power. Nor do the constitutional provisions above quoted work such result. While the municipality in the performance of certain of its functions acts as agent of the State it may not as such agent fix for the State its public policy.   *   *   *
Unless delegated in some effective way the police power remains in the State. This is settled by the recent case of *City of Kalamazoo* v. *Titus,* 208 Mich 252, 261:   *   *   *
" 'Political experiment has not yet produced, in this State, the autonomous city,—a little State within the State.'   *   *   *
(Also citing *Clements* v. *McCabe,* 210 Mich 207.)   *   *   *

"In the provisions under consideration the city has undertaken to exercise the police power not only over matters of municipal concern but also over matters of State concern; it has undertaken not only to fix a public policy for its activities which are purely local but also for its activities as an arm of the State.   *   *   *   If   *   *   *   the city possesses such of the police power of the State as may be necessary to permit it to legislate upon matters of municipal concern, it does not follow that it possesses all the police power of the sovereign so as to enable it to legislate generally in fixing a public policy in matters of State concern. This power has not been given it either by the Constitution or the home-rule act."

---

* See CL 1948, and CLS 1954, § 117.1 *et seq.* (Stat Ann 1949 Rev and Stat Ann 1953 Cum Supp § 5.2071 *et seq.*).—REPORTER.

3. Appellants contend that sections 4, 5 and 7 of the turnpike act are in violation of article 8, §§ 27 and 28, of the Michigan Constitution (1908).

Article 8, § 28, of the Constitution, provides, in part:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

Article 8, § 27, of the Constitution, reads:

"The legislature shall not vacate nor alter any road laid out by commissioners of highways, or any street, alley or public ground in any city or village or in any recorded town plat."

Section 4 of the turnpike act (CLS 1954, § 252.104, Stat Ann 1953 Cum Supp § 9.1095[4]), provides:

"The authority is hereby authorized and empowered:   *   *   *
"(i) To acquire in the name of the turnpike authority   *   *   *   by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain in the manner hereinafter provided, such public lands, parks, playgrounds or reservations, highways or parkways,   *   *   *   or any lesser interest in private property;   *   *   *
"(j) To designate the locations, and establish, limit and control such points of ingress to and egress from each turnpike project as may be necessary or desirable in the judgment of the authority." (CLS 1954, § 252.104 [Stat Ann 1953 Cum Supp § 9.1095 (4)].)

The provision in the Constitution, art 8, § 28, that cities have the right to "reasonable control of their streets" was considered by this Court in *Allen* v. *State Highway Commissioner*, 338 Mich 407, involving a construction of the specific provision in-

voked herein.   The Court in that case said (pp 415, 416):

"The right to reasonable control of their streets is not a gift of an arbitrary prerogative to the cities, villages and townships.   The reasonableness of the city's control of its streets is not to be within the final determination by the city in all cases, for that in practical effect could erase the word 'reasonable' from the constitutional provision.   The reasonableness may be determined in accordance with the State legislature's interpretation in some instances provided that such interpretation can be approved by the court.   Interpretation can give rise to a justiciable question.   The court would not ordinarily substitute its judgment for that of the city as to the control of the streets."

. Section 7 of the turnpike act (CLS 1954, § 252.107, Stat Ann 1953 Cum Supp § 9.1095[7]) contains the following language:

"The authority is hereby authorized and empowered to acquire by condemnation or by the exercise of the power of eminent domain any lands, property, rights  *  *  *  and other property, including public lands, parks, playgrounds, reservations, highways or parkways  *  *  *  of any  *  *  * municipality or political subdivision deemed necessary or convenient for the construction or the efficient operation of any project or necessary in the restoration of  *  *  *  property damaged or destroyed.   Such proceedings shall be in accordance with and subject to the provisions of any and all laws applicable to condemnation of property in the name of the State highway commissioner under the laws of the State of Michigan, including, but not limited to, the provisions of Act No. 149 of the Public Acts of 1911, as amended;  *  *  *  Act No. 215 of the Public Acts of 1925;[1]  *  *  *  and Act No. 352

---

[1] These acts are CL 1948, §§ 213.21–213.41 (Stat Ann and Stat Ann 1953 Cum Supp §§ 8.11–8.31) and CL 1948, §§ 213.151–213.153 (Stat Ann §§ 8.161–8.163), respectively.—REPORTER.

of the Public Acts of 1925, as amended, being sec-
tions 213.171 to 213.199, inclusive, of the Compiled
Laws of 1948."

The Authority has elected to use PA 1925, No
352, section 1 of which provides:

"(i) The State highway commissioner and boards
of county road commissioners are authorized and
empowered to take property and property rights
under the provisions of this act within the limits of
any incorporated city or village in this State: Pro-
vided, however, That before any proceedings are
taken under this act involving the taking of any
property or property rights in any city or village
for the changing, altering, opening or widening of
any street or highway, said street or highway shall
be taken over as county road or designated as a
State trunk line or Federal aid highway, as the
case may be, and the consent of the village or city
council by resolution so to take over or designate
said street or highway as a county road or State
trunk line or Federal aid highway shall be first ob-
tained." CL 1948, § 213.171 (Stat Ann 1953 Cum
Supp § 8.171).

The scope of the 2 sections of article 8 of the
Constitution, above quoted, is limited to roads,
streets, alleys or public places laid out, established
or *in esse* at the time any attempt to vacate or alter
might be made by the legislature through direct or
indirect legislative action. Under these sections the
legislature could not and has not in the turnpike
act authorized the vacating or altering of any road,
street, alley or public place by the Turnpike Author-
ity.

Article 8, §§ 27 and 28 of the Constitution make
it mandatory that the Authority obtain the consent
of the city or village before changing, widening or
altering any established streets or highways other

than streets or highways not controlled by the city or village, such as trunk-line highways.

The turnpike act can be and will be construed that it was the legislative intent, as expressed in the act, that the Authority obtain the consent referred to in the preceding paragraph.

The Authority has stated in this record that it has not contemplated changing, widening or altering any established city or village street without the consent of the city or village.

Intervenor-appellant requests that this Court expressly state in its opinion that the consent provisions of PA 1925, No 352, are applicable to section 7 of the turnpike act because "the opinion of the trial court with respect to construction of the foregoing provision of the 1925 act is very brief." We believe the trial court so held. And this Court holds that the consent provisions of PA 1925, No 352 (CL 1948, §§ 213.171–213.199 [Stat Ann and Stat Ann 1953 Cum Supp §§ 8.171–8.200]), apply to section 7 of the turnpike act.

This Court finds that sections 4, 5 and 7 of the Michigan turnpike act are not in violation of the Michigan Constitution (1908), art 8, §§ 27 and 28.

4. Appellants contend that sections 4 and 13 of the turnpike act are in violation of the Constitution (1908), art 6, § 22, and art 10, § 18.

Article 6, § 22, of the Constitution, provides, in part:

"The State civil service shall consist of all positions in the State service except those filled by popular election, heads of departments, members of boards and commissions, employees of courts of record, of the legislature, of the higher educational institutions recognized by the State Constitution, all persons in the military and naval forces of the State, and not to exceed 2 other exempt posi-

tions for each elected administrative officer, and each department, board and commission."

Section 4 of the turnpike act reads, in part:

"The authority- is hereby authorized and empowered:    *    *    *

"(1) To employ consulting engineers, superintendents, managers, and such other engineers, construction, accounting, appraisal and financial experts, attorneys and other employees and agents as may be necessary in its judgment, and to fix their compensation." (CLS 1954, § 252.105, Stat Ann 1953 Cum Supp § 9.1095[4].)

It is the contention of appellants that the Authority is an administrative agency of the State government, and, therefore, its employees are in State service and must be governed by article 6, § 22, of the Constitution. It is appellee's contention that the Authority is an agent of the State, existing separately from it.

As the same question is raised in regard to the status of the Authority involving accounting and auditing, we shall set forth article 10, § 18, of the Constitution (1908), and the applicable portions of sections 4 and 13 of the turnpike act before deciding these 2 questions raised by appellants.

Article 10, § 18, of the Constitution, provides:

"The legislature shall provide by law for the keeping of accounts by all State officials, boards and institutions, and by all county officials; and shall also provide for the supervision and audit thereof by competent State authority and for uniform reports of all public accounts to such authority. Such systems of account shall provide for accurate records of all financial and other transactions and for checks upon all receipts and disbursements of all such officials, boards and institutions; and shall be uniform for all similar boards, institu-

tions and county officials. All public accounts and the audit thereof shall be public records and open to inspection."

Section 4 of the turnpike act reads, in part:

"The authority is hereby authorized and empowered:   *   *   *

"(g) To fix and revise from time to time and charge and collect tolls for transit over each turnpike project constructed by it;"

And section 13 of the turnpike act reads, in part:

"Such tolls shall not be subject to supervision or regulation by any other commission, board, bureau or agency of the State." (CLS 1954, § 252.113, Stat Ann 1953 Cum Supp § 9.1095[13].)

The legislature clearly expressed its intention that the Turnpike Authority should not be considered as an alter ego of the State, and that said Authority should be distinguished from the general State departments supported by general taxation. The legislature set up definite purposes, definite methods, whereby costs of construction and operation should be met without imposing a tax load on the people of the State. There is a provision in this act that after the turnpike highway is paid for from revenue collected from those who use the highway, said turnpike highway should be taken over by the State as part of the State highway system.

This Court recently commented upon the relationship existing between an authority and the governmental unit it serves in *Rude* v. *Muskegon County Building Authority,* 338 Mich 363. In this case the petitioner sought an injunction to prevent the Authority from acquiring a welfare administration building and claimed that the Authority was the alter ego of the county, and, therefore, was bound by constitutional provisions, such as debt limita-

tions regarding the raising of money, spending, and pledging the county credit. The circuit court granted the injunction. This Court overruled the lower court, stating (p 366):

"We are satisfied to overrule the finding as to alter ego. While the authority is in a sense a county-wide municipal corporation, it is limited in its scope of activities even inside of county affairs. The legislature in enacting the statute providing for the creation of an authority evidently intended it to be a separate body from the board of supervisors. The board of supervisors in this case evidently intended the authority to carry on specific activities with which from then on, the board need not necessarily directly concern itself."

Recent cases outside of Michigan have looked at the source of the authority's income and the legal status of its obligations, holding that if the full faith and credit of the government is not pledged and if the activities of the authority are not tax supported, the authority is separate from the government and autonomous. *State of New Jersey, Department of Civil Service,* v. *Parking Authority of City of Trenton,* 27 NJ Super 284 (99 A2d 177); *Guaranty Trust Co. of New York* v. *West Virginia Turnpike Commission,* 109 F Supp 286; *Helvering* v. *Gerhardt,* 304 US 405 (58 S Ct 969, 82 L ed 1427).

Exercising its general police powers of the State, the legislature can choose from many different methods to provide for highways. It is the opinion of this Court that sections 4 and 13 of the turnpike act are not in violation of the Michigan Constitution (1908), art 6, § 22, and art 10, § 18.

5. Intervenor-appellant also contends that section 19 of the turnpike act is in conflict with article 10, § 12, of the Constitution (1908).

Appellant bases this contention on the fact that section 19 of the turnpike act appropriates $500,000

out of the State highway department's share of the motor vehicle highway fund as a revolving fund for the use of the Authority in planning toll roads. Appellant contends that this is in violation of the Constitution, art 10, § 12, which provides:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

A similar question was presented to this Court in *State Highway Commissioner* v. *Detroit City Controller,* 331 Mich 337. In that case this Court held that where bonds are payable solely from revenue there is no pledge of State credit. This Court holds that section 19 of the turnpike act (CLS 1954, § 252.-119, Stat Ann 1953 Cum Supp § 9.1095[19]) is not in conflict with article 10, § 12, of the Constitution.

6. Intervenor asks this Court to decide that the turnpike act is in conflict with the State Constitution (1908), art 5, § 21, governing the object and title of laws. The title of the act (PA 1953, No 176) is as follows:

"An act to facilitate vehicular traffic in the State of Michigan by providing for construction, maintenance, repair and operation of turnpike projects, creating the Michigan turnpike authority and defining its powers and duties; providing for financing such projects by issuance of turnpike revenue bonds of the authority payable solely from tolls and other revenues to pay cost of construction, maintenance, repair and operation of such projects and to pay such bonds and the interest thereon; providing for appropriations for study of such projects and employment of engineers and others in connection therewith; providing for the taking over of uncompleted limited access highways, payment of bonds and the transfer of unexpended construction funds in connection therewith; and providing for court validation of turnpike revenue bonds."

It is appellant's contention that the title contains no reference to the points covered, namely, the attempted release from constitutional requirements of consent by invaded municipalities, civil service, and State auditing and accounting requirements, and, therefore, the title is in violation of the Constitution, article 5, § 21, which provides in part that:

"No law shall embrace more than 1 object, which shall be expressed in its title."

This Court has repeatedly held that if the title clearly expresses the subject matter and conveys it sufficiently, it need not constitute a complete index of the statute. *Krench* v. *State of Michigan,* 277 Mich 168; *In re Brewster Street Housing Site,* 291 Mich 313; *Benson* v. *State Hospital Commission,* 316 Mich 66; *Mayor of Port Huron* v. *City Treasurer of Port Huron,* 328 Mich 99.

It is our opinion that there is no merit to appellant's contention and that the title of the act is sufficient to embrace all matters covered by the specific provisions of the act.

7. Intervenor further contends that the turnpike act is a special act and, therefore, violates the Michigan Constitution (1908), art 5, § 30. Section 23 of the turnpike act (CLS 1954, § 252.123, Stat Ann 1953 Cum Supp § 9.1095[23]) reads, in part:

"It is the judgment of the legislature that there be an immediate study and survey by the authority of the feasibility of 2 turnpike projects, 1 of which shall start at the Ohio State line near the city of Toledo, running thence northerly through Monroe county paralleling the existing State trunkline highways to Rockwood, thence northerly in Wayne county connecting Trenton, Wyandotte and Ecorse paralleling Fort street, thence northerly and northeasterly to the Detroit loop district: Provided, That an extension may be built, after entering the Wayne

county and Detroit metropolitan area, northerly to connect the cities of Pontiac, Flint, Saginaw and Bay City: * * * and the other such turnpike project to connect the Detroit and Wayne county metropolitan area westerly across the southern section of the State of Michigan to a terminus at the southwestern border of the State of Michigan and the State of Indiana, at such point as will, in the judgment of the authority, provide the best and most logical means of providing modern highway facilities connecting said Detroit and Wayne county metropolitan area to the city of Chicago."

Article 5, § 30, of the Constitution (1908) provides:

"The Legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act, excepting acts repealing local or special acts in effect January 1, 1909 and receiving a 2/3 vote of the legislature shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

Similar language was used in the statute construed in *Attorney General, ex rel. Eaves,* v. *State Bridge Commission,* 277 Mich 373, and commenting thereon this Court said (p 378):

"The bridge in question is international in character and will be used by those, from all parts of both nations who desire to enter or leave the United States through Port Huron. Its only so-called local characteristic is that its American approach is at Port Huron. If the act in question were deemed to be local or special in its nature, what limits should have been placed by the legislature upon those who should vote upon the question? Can those who live in Wayne county and who use the Port Huron gateway be said to be unaffected? Assuming that the act is to be construed as a local or special act, what district is affected and how shall its limits be determined?

Is it the city of Port Huron? Are nearby cities and villages to be excluded? To state the question is to give the answer. So far as the State of Michigan is concerned, practically all of its citizens are affected directly or indirectly by the means of ingress and egress at Port Huron just as they are at the city of Detroit. The geography of Michigan requires all of its citizens to be particularly interested in transportation across, over and under the waters of the State, otherwise they might remain without means of vehicular transportation except to the south and west.

"The scope of the act is not limited to an international bridge and ferries at or near Port Huron although it does embrace such objects."

By this act the Michigan legislature did not direct the Authority to construct certain turnpike highways, but only asked the Authority to give careful consideration as to the feasibility, and gave to the Authority discretion to construct highways in certain areas only if such project could be successfully financed, and further gave to the Authority the problem of determining as to whether there was an immediate need and necessity for such turnpike highway. It is the opinion of this Court that section 23 of the turnpike act is not in violation of the provisions of article 5, § 30, of the Constitution (1908).

8. Appellants insist that section 2(b) of the turnpike act conflicts with article 8, § 14, of the Michigan Constitution (1908) in that it grants to the Turnpike Authority power to construct bridges over navigable streams without the consent of the county board of supervisors.

Article 8, § 14, of the Constitution provides:

"No navigable stream of this State shall be either bridged or dammed without permission granted by the board of supervisors of the county under the provisions of law, which permission shall be subject to such reasonable compensation and other conditions

as may seem best suited to safeguard the rights and interests of the county and the municipalities therein. No such law shall preclude the State from improving the navigation of any such stream, nor prejudice the right of individuals to the free navigation thereof."

Plaintiff-appellant in its brief states:

"The right of the board of supervisors to withhold permission is perhaps not unlimited, but that question is not before this Court. By sections 2 and 5 of the turnpike act, the Authority is empowered without any limitation to bridge navigable streams. The Authority has made no attempt to obtain such permission, nor have they ever indicated an intention to do so."

The constitutional provision herein invoked goes back to the 1850 Constitution. In the opinion of this Court the same object is set forth in both the 1850 constitutional provision and the turnpike act, namely, to provide for the people of this State improved and the best of transportation. There is no showing in this record that the Authority contemplates constructing bridges over navigable streams which will interfere with the public's right of navigation and, therefore, we hold that section 2(b) of the turnpike act (CLS 1954, § 252.102, Stat Ann 1953 Cum Supp § 9.1095[2]) is not in conflict with the Constitution (1908), art 8, § 14.

9. Intervenor-appellant insists that section 7 of the turnpike act, giving the Authority condemnation powers like those of the State highway commissioner, is in conflict with article 13, § 2, of the Michigan Constitution (1908), which reads:

"When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be

ascertained by a jury of 12 freeholders residing in the vicinity of such property, or by not less than 3 commissioners appointed by a court of record, as shall be prescribed by law: Provided, That the foregoing provision shall not be construed to apply to the action of commissioners of highways or road commissioners in the official discharge of their duties."

By section 7 it is provided that condemnation proceedings shall be carried forward by the Authority "subject to the provisions of any and all laws applicable to condemnation of property in the name of the State highway commissioner." Intervenor contends that if the Authority is an agent of the State, existing separately from it, and should not be considered as an alter ego of the State (as discussed in part 4 of this opinion), said Authority should be prohibited from exercising the powers granted to the highway commissioner by article 13, § 2, of the Constitution.

In *Fitzsimons & Galvin, Inc.,* v. *Rogers,* 243 Mich 649, this provision of the Constitution was urged by plaintiff whose property was being taken for a railroad right-of-way. We there said (pp 661, 662):

"It is true that the railroad act[1] * * * affords a jury trial but it does not follow that the legislature may not provide a proper procedure without trial by jury. The present undertaking is a State project and as such clearly falls within the exception found in the State Constitution as to the right of a jury trial. * * *

" 'In the absence of a special constitutional or statutory provision there is no right to trial by jury in condemnation proceedings. Due process of law does not require the damages in such proceedings to be assessed by a jury.' 20 CJ, p 999.

"The highway act under which the commissioner is here proceeding provides for a determination of

---

[1] See CL 1948, § 464.15 (Stat Ann § 22.218).—REPORTER.

necessity by a hearing before the State highway commissioner, and for an assessment of damages by 3 court commissioners."

It is the opinion of this Court that section 7 of the turnpike act (CLS 1954, § 252.107, Stat Ann 1953 Cum Supp § 9.1095[7]), is not in conflict with the provisions of article 13, § 2, of the State Constitution (1908).

10. Intervenor also urges that section 24 of the turnpike act, giving the Authority power to make nonreviewable determinations, violates articles 4 and 7 of the Constitution 1908.

Section 24 of the act provides:

"All determinations made by the authority in the exercise of its discretionary powers, including, without limitation with reference to the location and terminal points of any turnpike constructed by it, the materials to be used in its construction and the plans and specifications therefor, the tolls to be charged for the use thereof, the letting of contracts for the construction of turnpikes or the sale of bonds to provide funds for the payment of the cost thereof, except as otherwise herein provided, shall be conclusive and shall not be subject to review by the courts:  Provided, That this section shall not deprive the courts of jurisdiction of any violation of this act or from the consideration of any question of interpretation of law."

Article 4 of the Constitution deals with the subject of division of powers of government, and article 7 establishes the judicial department.

The act here in question clearly says that it was the legislative intent that the Authority be clothed with administrative discretion necessary to carry forward the purposes of the Michigan turnpike act. This Court has aproved the grant of such administrative discretion in *Wolgamood* v. *Village of Con-*

*stantine*, 302 Mich 384, and in *City of North Muskegon* v. *Bolema Construction Co.*, 335 Mich 520.

11. Appellants contend that sections 1 and 11 of the turnpike act (CLS 1954, §§ 252.101, 252.111, Stat Ann 1953 Cum Supp §§ 9.1095[1], 9.1095[11]), authorizing the issuance of revenue bonds on a nondebt basis, conflict with the provisions of the State Constitution (1908), art 10, §§ 10 and 11. Article 10, § 10, provides:

"The State may borrow not to exceed $50,000,000 for the improvement of highways and pledge its credit, and issue bonds therefor on such terms as shall be provided by law."

Article 10, § 11, provides:

"No * * * evidence of State indebtedness shall be issued, except for such debts as are expressly authorized in this Constitution."

This question was presented to this Court in *Nichols* v. *State Administrative Board*, 338 Mich 617, wherein we held: (1) Revenue bonds for construction of the Mackinac bridge did not constitute an indebtedness of the State within the meaning of the Constitution limiting State indebtedness for improvement of the highways, where the statute providing for the issuance of bonds declared they were payable solely from revenues of the State agency constructing and operating the bridge and source of payment was stated on the face of the bonds as well as the fact that they were not general obligations of the State (Constitution 1908, art 10, § 10; PA 1952, No 214, as amended by PA 1953, No 141 [CLS 1954, § 254.311 *et seq.*, Stat Ann 1953 Cum Supp § 9.1361(1)]); and (2) That revenue bonds of a State agency did not become general obligation bonds of the State on the theory that the principal is liable for the acts of its agent, where the authorizing statute and the bonds both stated they were payable

solely from revenues and were not general obligations of the State.

The turnpike act provides that the bonds are payable solely from revenue and are not general obligations of the State. Sections 1 and 11 of the act are not in conflict with the State Constitution (1908), art 10, §§ 10 and 11.

12. Intervenor contends that section 22 of the turnpike act (CLS 1954, § 252.122, Stat Ann 1953 Cum Supp § 9.1095[22]), providing for bond validation is in violation of article 4, § 2, of the Michigan Constitution (1908), and constitutes an infringement by the legislative department upon the prerogatives of the judicial department.

Article 4, § 2, of the Constitution (1908), reads:

"No person belonging to one department shall exercise the powers properly belonging to another, except in the cases provided in this Constitution."

Section 22 of the act grants to the Authority the right to issue bonds, and provides that the Authority may, if it deems it expedient, have its authority to issue bonds and the legality of all proceedings in connection therewith, determined in the circuit court for Ingham county by filing a petition against the State of Michigan and the taxpayers, property owners and citizens thereof. After the filing of such petition the circuit court issues an order in the form of a notice against the State of Michigan and against the several property owners, taxpayers, citizens, and others having or claiming any right, title or interest in property to be affected by the issuance of the bonds and requiring that all persons of the State, through the attorney general, appear at a time and place designated to show cause why the prayer of the petition should not be granted and the proceedings and bonds validated. This section further provides that the attorney general shall carefully

examine the petition and if, in the opinion of the attorney general, the petition is defective, insufficient or untrue, or if the bonds in question have not been duly authorized, defense shall be made thereto as may seem proper by the attorney general. The section proceeds to provide for notice through publication and an establishment of the rights of any property owners, taxpayers, citizens, or persons to become a party to the proceedings by pleading to said petition. The method of hearing is provided for with the power vested in the judge to proceed to hear and determine all questions of law and fact and to render a final decree with the least possible delay. The section concludes with the right of appeal, within 20 days after the entry of such decree, to the Supreme Court, with the provision that if no appeal is taken within said time the validity of said bonds shall never be called in question in any court.

This section of the turnpike act is not mandatory upon the Authority, as it expressly states that the Authority may take such action in the Ingham circuit court "if it deems it expedient." It provides a method whereby the circuit court of Ingham county, and in case of appeal the Supreme Court of Michigan, can make a determination in regard to the issuance of said bonds in such a way that the validity of the bonds "shall never be called in question in any court."

In *Washington-Detroit Theatre Co. v. Moore,* 249 Mich 673 (68 ALR 105), this Court in a lengthy opinion commented upon the constitutionality of the declaratory judgment law, being PA 1929, No 36 (CL 1948, § 691.501 *et seq.* [Stat Ann § 27.501 *et seq.*]). In this case we held that there is no constitutional restriction on the power of the legislature to recognize the complexities of modern affairs and to provide for the settlement of controversies between citizens without the necessity of one committing an

illegal act, or wrong, or threatening to wrong the other, and that there is no constitutional expression of limitation upon the power of the courts to decide such disputes. The Court further commented upon the fact that it has often said that a cause of action arises only upon the breach of a duty and the invasion of a right, but this is merely the announcement of a general rule of practice subject to possible exceptions and to legislative change.

The advisability of such a law is a legislative question and the legislature in providing in section 22 of the turnpike act (CLS 1954, § 252.122, Stat Ann 1953 Cum Supp § 9.1095[22]) for the method by which the Authority, if it deems it expedient, may bring an action in the circuit court of Ingham county to have the question of the validity of the bonds determined, did not violate the provisions of article 4, § 2, of the Constitution (1908).

13. Intervenor contends that sections 4 and 23 of the turnpike act conflict with the State Constitution (1908), art 5, § 1, as being delegations of authority. Section 4 of the act provides:

"The authority is hereby authorized and empowered: * * *

"(e) To construct, maintain, repair, police and operate turnpike projects as hereinabove defined; and to establish rules and regulations for the use of any such turnpike project; * * *

"(g) To fix and revise from time to time and charge and collect tolls for transit over each turnpike project constructed by it; * * *

"(j) To designate the locations, and establish, limit and control such points of ingress to and egress from each turnpike project as may be necessary or desirable in the judgment of the authority." (CLS 1954, § 252.104, Stat Ann 1953 Cum Supp § 9.1095 [4].)

Section 23 of the act reads, in part:

"The Michigan turnpike authority may, in its discretion, construct only such portions of said project as may be successfully financed.   *   *   *   The Michigan turnpike authority is therefore hereby authorized and directed to take the necessary action to study the feasibility of turnpike projects to serve such purposes, and if, in its judgment, there is immediate need and necessity for the 2 turnpike projects   *   *   *   and such turnpike projects can be successfully financed and constructed to immediately proceed with the financing and construction of such turnpike projects, or any portion thereof." (CLS 1954, § 252.123, Stat Ann 1953 Cum Supp § 9.1095 [23].)

It is the intervenor's position that the principles of separation of powers was violated by unlawfully delegating to the Authority the power to decide how, when, where and for how much, toll roads shall be built and users charged therefor.

This Court approved legislative grant of the right of fact-finding powers and discretionary authority in the case of *In re Brewster Street Housing Site,* 291 Mich 313.

In the case of *Milk Marketing Board* v. *Johnson,* 295 Mich 644, this Court dealt with the right of the legislature to give to the board the right to establish and enforce standards of marketing milk, and approved such a grant of power where there were sufficient standards set in the statute for the guidance of the administrative unit.

An examination of the turnpike act discloses that the legislature carefully framed and limited the purpose and procedure to be followed by the Authority, such as annual reports to the governor and the legislature; annual audits; the requirement that rules and regulations of the Authority are to be adopted under the provisions of the administrative code and the administrative procedure act; and that

final acts of the Authority are to be journalized and open to the public.

The complexities of modern life are such that courts of last resort have recognized the necessity of legislative grants of authority to carry forward programs such as provided in this turnpike act.

It is the opinion of this Court that sections 4 and 23 of the turnpike act do not conflict with the provisions of the Constitution (1908), art 5, § 1.

14. Appellants also urge that sections 4, 13 and 17 of the turnpike act (CLS 1954, §§ 252.104, 252.-113, 252.117, Stat Ann 1953 Cum Supp §§ 9.1095[4], 9.1095[13], 9.1095[17]), violate the provisions of article 13, § 1, of the Michigan Constitution (1908). Article 13, § 1, reads:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

Section 4 of the turnpike act sets forth the powers of the Authority, subdivision (h) giving to the Authority the right "to acquire, hold and dispose of real and personal property in the exercise of its powers and the performance of its duties;" and subdivision (i) the right to acquire by purchase or otherwise, or by the exercise of the power of eminent domain, public lands, parks, playgrounds, highways or parkways.

Section 13 of the act permits the Authority to fix, revise, charge and collect tolls for the use of the turnpike project, and also to contract with persons, partnerships, associations or corporations who desire to use a part of said highway for gasoline stations, garages, hotels, restaurants, et cetera, and to fix the terms, conditions, rents and rates of charge for such use. There are definite restrictions in this

section in regard to gasoline service stations, such as the necessity that there be a sufficient number established to permit reasonable competition by private business in the public interest, and that no one supplier be granted the right to operate more than 25% of the service stations upon any turnpike highway, or more than one service station within the same service area.

Section 17 gives to counties, cities, villages and townships, and other political subdivisions of the State, the right to lease, lend, grant, or convey to the Authority, at its request, real property which may be necessary or convenient to the effectuation of the authorized purposes of the Authority. This section also provides for the maintenance, repair and policing of the turnpike project.

This is the first case presented to this Court involving the construction of the Michigan turnpike act. Other States have passed upon similar legislation. In 1950 the New Jersey superior court in *Mayor, City of Elizabeth,* v. *New Jersey Turnpike Authority,* 7 NJ Super 540 (72 A2d 399), commented upon the power granted to an authority in the taking of property, such as is provided in the Michigan turnpike act, and stated (pp 545, 546):

"In the instant case, the legislature of New Jersey has by statute authorized the construction of the turnpike between 2 terminal points through designated counties. The Turnpike Authority is an administrative agency acting for the State and is vested with discretion in the selection of the particular route which the proposed turnpike will traverse. When public agencies are vested with discretionary power, a court of equity will not interfere unless there has been a plain and palpable abuse of discretion. A mere difference of opinion is not sufficient to justify the substitution of the court's discretion for that of the duly constituted authority vested by the legislature. (Citing cases.)

"The observations of Vice-Chancellor Berry in *State Highway Commission* v. *City of Elizabeth*, 102 NJ Eq 221, 228, 229 (140 A 335), affirmed, 103 NJ Eq 376 (143 A 916), are pertinent.  He said: 'The legislature intended to confer complete power and the widest discretion upon the commission, in order that the construction of the State highway system might be facilitated in the greatest degree.  Absolute discretionary power in the determination of the course of a State highway route through a city resulting in the taking of city property already devoted to a public use may be a dangerous power in the hands of an arbitrary State agency; but that is a matter for consideration by the legislature and not by the courts.'"

The rights of the Authority under sections 4 and 17 of the act to acquire property for the turnpike project have been commented upon in various sections of this opinion, and this Court finds that sections 4 and 17 are not in violation of article 13, § 1, of the Michigan Constitution (1908).

The right of an authority to enter into a contract or lease with concessionaries was dealt with in the case of *Bush Terminal Co.* v. *City of New York*, 282 NY 306 (26 NE2d 269).  Action was brought by private owners to restrain the city and the authority from entering into a contract on the ground that the authority ought to have to pay taxes in order to protect private business operators from unfair competition.  The court, in passing upon the question, said (p 315):

"Acts performed in carrying out a legislative mandate, as an incident to the exercise of a general power conferred by the legislature, are not *ultra vires* where they were within the contemplation of the legislature when it granted the general power."

The act clearly shows that the legislature was conscious of the fact that there would be necessary

services which would of necessity have to be rendered to the driving public and which could best be provided by private enterprise.

The legislative grant of power to the Authority to enter into contracts with private individuals or corporations so as to provide for gasoline stations, restaurants, et cetera, constitutes an activity incidental to the discharge of a general power, and would not be *ultra vires*.

It is the opinion of this Court that section 13 of the turnpike act (CLS 1954, § 252.113, Stat Ann 1953 Cum Supp § 9.1095[13]) is not in violation of the provisions of article 13, § 1, of the Constitution (1908).

15. Appellants also contend that the turnpike act is in conflict with the State Constitution (1908), art 10, § 14, since it authorizes a public corporation to be a party to a work of internal improvement. Article 10, § 14, provides:

"The State shall not be a party to, nor be interested in, any work of internal improvement, nor engage in carrying on any such work, except:

"1. In the development, improvement and control of or aiding in the development, improvement and control of public roads;    *    *    *

"3. In reforestation, protection and improvement of lands in the State of Michigan;

"4. In the expenditure of grants to the State of land or other property."

In *Jasnowski v. Board of Assessors of the City of Detroit*, 191 Mich 287, this Court held that a wagon road is a highway.

In *Oakland Drain Commissioner v. City of Royal Oak*, 306 Mich 124, 142, this Court stated:

"Furthermore, the establishment and operation of the proposed sewage-disposal system is hereinafter determined to be a self-liquidating project and we have repeatedly held that such a project is not a

work of internal improvement and, therefore, not prohibited by the constitutional provision above quoted."

This Court holds that the turnpike act is not in conflict with article 10, § 14, of the Michigan Constitution (1908).

After careful consideration of all the questions set forth in appellants' statements of questions involved, this Court concludes and determines that the provisions of the turnpike act (PA 1953, No 176*) are not contrary to or in violation of the Michigan Constitution (1908).

The decree of the trial court is affirmed. No costs, a public question being involved.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.

---

* CLS 1954, §§ 252.101–252.126, Stat Ann 1953 Cum Supp §§ 9.1095 (1)–9.1095 (26).—REPORTER.