298 SUPREME COURT OF WISCONSIN,

The State vs. Harris.    Jensen vs. The Board of Supervisors of Polk County.

## JENSEN VS. THE BOARD OF SUPERVISORS OF POLK COUNTY.

STATE ROADS: CONSTITUTIONAL LAW: STATUTE CONSTRUED: *(1) Ch. 223 of 1875 construed: What expenses chargeable to counties thereunder. (2) Effect of failure to give a certain notice. (3-6) Power of the legislature as to constructing state roads, and compelling levy of taxes by counties, towns and cities.*

1. Ch. 223 of 1875, which provides for laying out a state road in Polk and Burnett counties, though it may impose upon each of said counties the expense of *laying out* such road therein, does not impose upon it the ex-

Jensen vs. The Board of Supervisors of Polk County.

pense of opening the road, but apparently leaves that expense to be a charge upon the several towns under the general statutes.

[2. *It seems* that the neglect of the commissioners appointed by said act to give the notice required by sec. 93, ch. 152 of 1869 (Tay. Stats., 502, § 108) not only rendered void their proceedings in laying out and establishing the road as against the land-owners whose land was taken for the road *(State v. Langer*, 29 Wis., 68, and earlier cases in this court), but also rendered void a contract for work on such road let by the commissioners, as against the town which would otherwise be liable for such work.]

[3. In the absence of express constitutional restriction, the legislature has power to appoint commissioners to lay out and establish state roads; and the constitutional amendment of 1871 merely limits this power to roads "extending into more than one county."]

[4. An act of the legislature appointing commissioners to lay out a state road in two or more counties, and imposing the expense thereof upon such counties, is not in violation of the constitutional provision for uniformity in the system of town and county government. Nor does an act authorizing such commissioners to *open* or construct the road, violate the uniformity of *county* government. Whether such an act would violate the uniformity of *town* government, *quære*.]

[5. An act of the character above described does not violate the constitutional provision which prohibits the state from carrying on works of internal improvement, nor that which requires the rule of taxation to be uniform.]

[6. The legislature has power to compel the levy of taxes by counties, towns and cities for any *municipal* purpose, such as the construction of roads and bridges.]

APPEAL from the Circuit Court for *Polk* County.

Plaintiff filed with the defendant board a claim against Polk county, for work done by him in clearing and grubbing a certain "state road" under contract with persons appointed and acting as commissioners, by virtue of ch. 223, Laws of 1875. His claim having been disallowed, he appealed to the circuit court, where, after a trial without a jury, judgment was rendered in his favor for the amount of his claim. From this judgment the defendant appealed.

*S. H. Clough,* for the appellant.

For the respondent, there was a brief by *L. P. & J. K. Wetherby,* and oral argument by *J. C. Gregory.*

TAYLOR, J.   This case involves the construction and validity of chapter 223, Laws of 1875, as well as the regularity and validity of the proceedings of the commissioners named in said act.

The act provides for laying out and opening a state road in the counties of Polk and Burnett.   One of the main questions in the case arises upon the construction of sections 3, 4, 5 and 6 of said chapter, of which the following are copies:

"Section 3.   Upon the filing the order and survey of said road in the office of the county clerk in the several counties through which said road may pass, the said road shall become [a] public highway; and the said commissioners shall have full power to open out said highway, remove obstructions, build bridges, construct drains, corduroys and culverts, and may do the same by contract or otherwise, in the same way and manner, and to the same extent, that supervisors of towns have to open highways in their respective towns.

"Section 4.   As a compensation for laying out and opening out said road, said commissioners shall be entitled to the sum of three dollars and fifty cents per day for each day's service rendered in laying out and opening said road.   Said commissioners shall have the power to employ such assistants as may be necessary, not to exceed five, who shall receive as compensation not more than one dollar and fifty cents per day; also one surveyor, who shall be entitled to receive not more than five dollars per day for each day's service as surveyor.   Said commissioners shall have the power to procure all needful subsistence at a reasonable price, said subsistence to be paid for by the counties through which said road may run, in proportion to the amount used in each county in laying out and opening said road.

"Section 5.   There shall not be more than three of said commissioners employed at any time in laying out said road, or in opening said road, and no more than three of said com-

missioners shall be entitled to compensation for laying out and opening of said road at any one time.

"Section 6. When said commissioners shall have filed an order and survey of said road in the office of the county clerk in each of the counties through which said road shall run, it shall be the duty of the county board of supervisors, in each of those counties, to audit the accounts of said commissioners, on their filing such accounts, properly verified, with said county clerks."

This action is brought by the plaintiff to recover the sum of sixty dollars, which he claims is due to him from the defendant county for clearing and grubbing two acres in said county of Polk, on the line of the road, as the same is claimed to have been located by said commissioners under said act, the work having been done under a contract with said commissioners. He presented his claim to the county board of supervisors of said county; the board refused to allow it; he appealed to the circuit court of said county, and upon a trial in said court he recovered a judgment against the county for the amount of his claim and costs; and the defendant appealed to this court.

The first ground of error alleged, which we shall notice, is, that under the act of 1875, above quoted, the county of Polk is not obligated to pay the plaintiff for the work performed by him in grubbing and clearing said highway, admitting the act to be valid and constitutional.

It is admitted that unless this act renders the defendant liable to pay for such work, the plaintiff was not entitled to recover in the court below. The only general laws applicable to the case are sections 89, 96 and 99, ch. 19, R. S. 1858. Section 89 provides, among other things, that "all state roads which shall hereafter be laid out shall be opened and worked the same as other highways," and contains provisions for appraising the damages of persons whose lands are taken for such roads. Section 96 provides that the commissioners appointed to lay out such highways shall be paid for their ser-

vices, by the counties through which the road passes, such sum as the supervisors of such counties shall deem just. Section 99 provides that " all damages occasioned by the laying out and opening of any state road shall be paid by the several counties in which the same may be located."

It is clear that under these general provisions the counties in which a state road is located can only be compelled to pay for the services of the commissioners and their assistants in laying out and locating such road, and the damages which may be awarded to the land-owners for lands which may be taken by the laying out and opening thereof, leaving the duty of opening the road for the purposes of travel, and the expense of putting the same in a condition so that it may be traveled by the public, upon the towns in which the same is located. The provision in section 89 that " all state roads shall be opened and worked the same as other highways," clearly throws the expense of such opening and working upon the towns in which they are situated, as the only general laws upon the subject of opening and working highways require that the same shall be so opened and worked by the towns in which they are situated, and by the officers of such towns. This was the construction given to this provision by the state revisers; and in order that there might be no doubt upon this construction of the law hereafter, they made that part of said section read as follows: " All state roads shall be opened and worked as other highways by the several towns in which the same are or may be located." Section 1316, R. S. 1878.

In 1863 the legislature first conferred power upon the several boards of supervisors of the counties to lay out highways in certain cases, and it was provided that, in regard to these roads so laid out, " they should be opened and repaired in the respective towns in the same manner as other highways." Section 7, ch. 133, Laws of 1863; section 134, ch. 152, Laws of 1869; Tay. Stats., 506, § 122. And the county board was given the power to open such highways when the town should refuse to

do so; but no power was given to work or repair the same by the county. Chapter 117, Laws of 1869, was the first general law which authorizes any county to construct and keep in repair highways. This act was limited to the county of Brown, with a proviso that any other county might adopt the same (specifying the manner in which the same could be adopted). Chapter 152, Laws of 1872, authorized the several boards of supervisors to raise money by taxation to be expended in building and repairing roads in their respective counties. This chapter was amended by chapter 139, Laws of 1876, and is embodied in the Revised Statutes of 1878, secs. 1308 to 1311, inclusive. The law of 1872, as amended by chapter 139, Laws of 1876, provided that after a road which, under the provisions of such law, had been kept in repair by the county, was turned over again to the control of the town in which the same was situated, if the town should refuse to keep the same in repair, the county, after giving such town due notice to repair the same, might repair it, and charge the costs of such repair to the town; and the revisers, in section 1311, R. S. 1878, extended this power to state roads; so that now, if any town shall refuse to keep in repair any state or county road, the county board may cause the same to be repaired at the expense of such town. From an examination of these different laws upon the subject of highways, it will be found that the general rule is, that all highways, whether laid out by the town authorities, the county authorities, or commissioners appointed directly by the legislature, must be opened and worked at the expense of the towns in which they are located; but a general power is, however, given to the county boards of the several counties to raise money for the purpose of keeping *such of the main traveled roads in repair in their respective counties*, as they may adopt for that purpose; and the roads so adopted by the counties, whilst kept in repair by the counties, shall not be under the control of the town authorities, nor shall the town authorities be responsible for injuries resulting by reason of

their being out of repair whilst under such control. Section 1339, R. S. 1878. There is also a coërcive power given to the counties to compel the towns to keep state roads in their respective towns in repair. The only other general law which authorizes counties to expend money upon highways, is section 115, ch. 152, Laws of 1869, now section 1319, R. S. 1878; and this restricts the expenditure by the county to aid in the building of bridges in certain specified cases. The responsibility of opening and keeping in repair the highways of the state, outside of the cities and villages, is devolved upon the towns in which they are situated, irrespective of the authority which lays out and establishes the same; and the towns are not relieved of this responsibility by any general law which compels the opening and repair of the same by the counties.

It follows, therefore, that the county of Polk cannot be compelled to pay for clearing and grubbing this state road by force of any general law upon that subject, and, if compelled to pay, it must be by virtue of the provisions of said ch. 223, Laws of 1875. The general rule and policy of the law is to cast the burden of constructing and repairing such highways upon the towns where located; and, in order to change this policy and cast the burden upon the county, it must clearly appear from the act in question that such was the intent of the legislature. If the legislature have left it in doubt, then we must presume that it intended that the general rule and policy should prevail. Sedgwick on the Construction of Statutory and Constitutional Law, 267, note a; *People v. Board of Education*, 13 Barb., 400–409.

Section 6, ch. 223, Laws of 1875, is the only section of the act which has any bearing upon the question. Without that section there could be no pretense that the counties of Polk and Burnett would be liable for the payment of the moneys expended in the opening and construction of the highway authorized to be laid out and opened. Had that section been omitted, the general law must have controlled; and that pro-

vides that the counties shall only be liable for the damages awarded, and for the services of the commissioners in laying out the same, including, without doubt, pay for the services of their assistants in doing such work.

Sections 4 and 5 of said ch. 223 evidently refer to the work of the commissioners in laying out said road, and not to the work of constructing the same. If section 4 has any reference to the construction of the bridges, drains, corduroys and culverts referred to in section 3, it would be absurd to limit the commissioners to the employment of not more than five assistants, with a limited compensation of $1.50 each per day, when section 3 had already provided that they might have such work done by contract if they saw fit.

Section 6 provides that when the commissioners shall have filed their order and survey in the proper offices, it shall be the duty of the county board of supervisors in each of the counties to audit the accounts of said commissioners.

This language certainly indicates that the accounts of the commissioners here referred to are for services in laying out and establishing the road, as they are authorized to have such accounts audited immediately after filing the survey and order; and it is clear that they would not be authorized to do anything in the way of opening and constructing such road until after such survey and order were filed. Admitting, for the purposes of this case, that the direction to audit such accounts implies a duty to pay when audited, the language is too restricted to cover the claims of those whom the commissioners might, under section 3, employ to remove the obstructions and construct such road so that the same could be traveled by the public.

Section 3 uses the same language as in section 6: "Upon filing the order and survey in, etc., the road shall become a public highway, and said commissioners shall have full power to open out said highway, remove obstructions, etc., in the same way and manner and to the same extent that super-

visors of towns have to open highways in their respective towns." This section gives to the commissioners the powers of the supervisors of the respective towns in which the road is located, to open and construct the same, so far as is necessary to make the same capable of being traveled by the public. The expense of doing this work, by the general law, as above shown, is cast upon the towns, and not upon the counties. It would seem that the legislature, in the enactment of section 3, supposed they had done all that was necessary in directing how the road should be opened for the purposes of travel, and to fix the liability upon the towns under the general laws for the expenditures made under that section; and that the remainder of the chapter is directed simply to fixing the compensation of the commissioners and their assistants in laying out the road, and providing for their payment. The language of section 6 is, we think, too restricted and uncertain to change the fixed and general policy of the law, and relieve the towns of the expense of opening the road, and cast the burden upon the county.

If there be no constitutional objection to the act, and if, in construing it according to its letter and apparent meaning, we have misunderstood the intention of the legislature, it will be better to procure an amendatory act which will clearly and without doubt charge the expenses of opening such highway upon the counties in which the same is situated, than that this court should guess at such intention and pervert the apparent meaning of the language used to carry out such supposed intention. Upon the record of the case as it now stands, we have very grave doubts whether either the towns or counties can be held chargeable with the expenses of opening and constructing such road.

The record shows that the commissioners did not give the notice required by section 93, ch. 152, Laws of 1869 (Tay. Stats., p. 502, § 108), but instead thereof posted notices in each of the counties ten days, instead of twenty days in each of the towns, as prescribed in said section 93.

That the giving of the notice required is jurisdictional, and that the neglect to give it rendered the proceedings of the commissioners void so far as the laying out and establishment of the road is concerned, as against the land-owners whose lands are taken for such road, is settled by the uniform decisions of this court. See *Austin v. Allen*, 6 Wis., 134; *Babb v. Carver*, 7 Wis., 124; *Roehrborn v. Schmidt*, 16 Wis., 519; *State v. Langer*, 29 Wis., 68.

It is urged that these cases are not applicable, and that a different rule must apply when the action is between the town and an individual who has, at the request of the proper officers, performed work in the opening and construction of a highway which the officers of such town claim to have laid out and established, or for doing work upon a highway which has been in fact opened and used by the public as such. It is urged that in cases of this kind the town is estopped, as against the party doing the work, from alleging that such highway was not lawfully laid out and established, or that such highway was not a lawful highway, as well as a highway *de facto*. Whatever the force of this argument might be as applied to the case of work done upon a highway which had been opened and used by the public for any considerable time, it can have little force when applied to the case of work done in opening the road in the first instance, and putting it in condition for public use as a highway; and still less in a case like the one at bar, where the road is laid out and the work done under officers, not of the town or county, but appointed by the legislature, and the whole proceeding, so far as the towns or counties are concerned, are "*in invitum*." In such case, it seems to me that in order to charge the counties or towns for work done under the contracts made with such officers, the claimant must show that the work was done under a contract which such officers were by law authorized to make.

The officers of a town or county are distinct from and are not the town or county. Ordinarily they have such powers

only as the law confers upon them, and they · can bind their respective municipalities only when acting within the powers so conferred. The municipality is not estopped by the acts of its officers, unless such acts are directed to be done by the municipality, or are ratified by it after the same are done. It is clear that the counties or towns cannot be estopped by the acts of temporary officers appointed by the legislature for a special purpose; and if it is sought to charge such towns and counties for the acts of such officers, it would seem that they could be charged only when they had proceeded strictly according to law. Without deciding whether this defect in the proceedings would be an absolute bar to the plaintiff's recovery for the work done, against the towns in which the highway is located, or against the county, had the act charged the county with the payment for such labor, we make the above suggestions as bearing upon the question as to the liability of the towns to pay for the work done under the provisions of the general law, should the parties interested see fit to attempt to enforce the claim against the towns, instead of applying to the legislature for relief.

As a complete answer to the claim of the respondent in any aspect of the case, the learned counsel for the appellant insists that the whole act is unconstitutional and void.

That the legislature has the power to appoint commissioners to lay out and establish state roads can only be questioned on the ground that it is prohibited from so doing by some positive provision of the constitution. Unless the power is taken away, it is clearly a legislative power, and can be exercised by the legislature. The power has been exercised by the territorial legislature during the existence of the territory, and by almost every legislature since the formation of the state. By the amendment of the constitution made in 1871, the power of the legislature is clearly recognized by limiting its exercise to certain specified cases. The language of the amendment, so far as it relates to this question, is as follows: "The legisla-

ture is prohibited from enacting any special or private law, . . . for laying out, opening or altering highways, except in cases of state roads extending into more than one county." This amendment of the constitution is a clear declaration that the power to pass acts for laying out, establishing and opening state roads is a legislative power; and that part of the amendment was adopted for the express purpose of restraining and limiting the power previously exercised by the legislature. In the case of *People v. Supervisors*, 20 Mich., 95, Justice Christiancy, in speaking of this power of the legislature over highways of every kind, says: " The legislative power is everywhere recognized as the proper guardian of all such public rights as the right of travel upon highways, as having, as the proper representative of the public, full power over the whole subject of laying out, opening, altering and discontinuing highways; and this power they may, so far as they have not been restrained by the constitution, exercise directly, without delegating it to any other tribunal." The same learned judge, in the case of *People v. Hurlbut*, 24 Mich., 62, repeats the same views, and expressly holds that the power to appoint commissioners to lay out and open highways is a legislative power, and, when not restrained by any other constitutional provision, is absolute upon that subject.

It is urged by the learned counsel, that, admitting that such is the rule, our constitution restrains the exercise of the power, and that its exercise is a violation of section 23, art. IV of the constitution, which provides that " the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." That the appointment of commissioners by the legislature to lay out and establish a state road which shall extend into two or more counties is not a violation of this provision of the constitution, is apparent from the fact that the laws respecting the government of towns and counties do not provide for laying out any roads extending from one county into another. Until the legislature

shall so amend the laws regulating the government of towns and counties as to provide for the laying out of highways extending from one county into another, there is no system of town or county government to be violated by reason of the laying out and establishing such highways by commissioners appointed by the legislature.

It is urged that so much of chapter 223, Laws of 1875, as authorized the commissioners to open and construct the highway laid out, so as to make the same passable for the public, violated this uniformity. It cannot violate any provision of the laws governing counties, as there is no general law which authorizes any county to open any highway for public use in the first instance. The law only authorizes a county, at the option of the board of supervisors, to assume control *over the main traveled roads therein.* It was held by this court that a special act granting power to one county to aid in the construction of a railroad did not violate this rule of uniformity; and if it did not, it is difficult to see how an act which compels the county to aid in opening a highway in such county can be unconstitutional for that reason. *Single v. Supervisors,* 38 Wis., 361–372. If that part of said chapter which provides for the opening and construction of such road violates the provision of the constitution above referred to, it is because it violates the uniformity of the system of town government, which provides that all state as well as other highways shall be opened and worked the same as other highways, by the proper officers of the town where situated. Whether this act is subject to the constitutional objections made to the act appointing special commissioners to superintend the construction of the court house of the county of Milwaukee *(State ex rel. v. Supervisors of Milwaukee,* 25 Wis., 339), or to the objections made to the act which attempted to take from the control of the proper town officers of the towns of Chippewa county, the moneys raised by taxes in said towns for the purpose of building and repairing high-

ways, and put them in the hands of the board of supervisors of the county for the purpose of expending the same, which was held a violation of the constitution in *McRae v. Hogan*, 39 Wis., 529; or whether it is to be controlled by the case of *State ex rel. v. Abert*, 32 Wis., 403, which holds that a law which authorized the board of supervisors of the county of Milwaukee to appoint one superintendent of the poor, when the general law applicable to all other counties required the appointment of three, does not violate the rule of uniformity, and is constitutional; or whether the whole subject of laying out and opening state roads is outside of the systems of town and county government, and the legislature may therefore provide for laying out and opening the same, without violating the uniformity of these systems — is, for the purposes of this case, unnecessary to decide.

The learned counsel for the appellant urges three other objections to the constitutionality of the act: *first*, that it violates the provisions of section 10, art. VIII, which prohibits the state from carrying on works of internal improvement; *second*, a general objection, that it infringes the rights of the counties by compelling them to pay for the construction of the road within their respective boundaries, without any assent on the part of such counties or their officers; *third*, that it violates the rule of uniformity in taxation, section 1, art. VIII. That this law does not engage the state in any work of internal improvement, is clearly demonstrated upon the face of it. It contains no authority for paying any of the cost of opening the highway out of the state treasury, and charges such cost, as we think, upon the counties and towns in which the same are situated: the cost of the laying out and establishing upon the counties, and that of opening and working the same upon the towns, if made chargeable to any municipality or body in the state. It is no more a work of internal improvement carried on by the state, because it directs the work to be done by officers specially appointed to do the

particular work, than it would be were the same work directed to be done by the proper officers of some town or towns, county or counties.

This question, we think, was finally disposed of by this court in *Bushnell v. Beloit*, 10 Wis., 195, and has not been questioned since.

The second objection, that it infringes the rights of the counties by compelling them to pay for the expenses of laying out and opening the roads, is practically answered by our construction of the statute, that, as to the cost of opening and working the road, the counties are not charged; but were the counties charged with such expense, as well as the expenses of laying out and establishing the same, we see no objection to the validity of the act. The legislature must in all cases determine by law what locality or division of the state shall be burdened with the expenses of opening and repairing highways; and although, as a general rule, there is a discretion given to the officers of the municipality as to the amount of moneys which shall be expended for that purpose, and as to the manner of expending the same, still that discretion need not necessarily be conferred upon such officers, and generally the discretion as to the sums which shall be raised and expended for that purpose is limited by the legislature to an amount below or above which the local officers cannot lawfully act. The highway law governing highway taxes in towns makes it imperative that the officers shall levy a tax not less than one mill nor more than seven mills on the dollar of the valuation of the real and personal property in the towns; and this limitation upward is extended in several of the counties of the state. See section 1240, R. S. 1878. That the legislature has the power to compel taxation for the construction and improvement of roads and bridges, there can be no reasonable doubt. This power to compel the opening, construction and repair of roads and bridges, and the collection of taxes for that purpose, must reside in some department of the govern-

ment; and we know of none in which, under the constitution, it can reside except in the legislature. There can be no doubt as to the power of the legislature to compel the several counties of the state, by general law, to open and work the state roads laid out and located within their respective boundaries; and unless there be some clause of the constitution which expressly prohibits it, the power to do so as to a particular road in a particular county is equally clear. The several city charters of the state contain provisions which charge the cost of opening and improving streets upon particular lots, or upon a particular district which is supposed to be especially benefited by such improvement; and these special provisions have always been upheld as a proper exercise of legislative power.

The municipalities of the state are not so independent of the state itself that no burden of taxation can be forced upon them by the legislature without their assent. It is held by this court that a municipality cannot be compelled to levy a tax for a purpose which is not a municipal purpose; but we know of no case where it has been held that a tax for a strictly municipal purpose may not be compelled by the legislature without the assent of such municipality.

In the case of *Mills v. Charleton*, 29 Wis., 416, Chief Justice DIXON, in delivering the opinion in that case, in which he denies the authority of the legislature to impose a tax upon a municipality without its consent, when such tax is not for a strictly municipal purpose, says: " But the case of taxation for a strictly public municipal purpose, as to defray the ordinary expenses of the municipal government, either in providing suitable roads and bridges, or for any other thing of acknowledged public necessity, depends, as we have seen, upon an entirely different principle. In the latter case, the power of the legislature, subject only to the constitutional rule of uniformity, when that rule applies, is most ample and unrestricted." See also *People v. Flagg*, 46 N. Y., 401. We do not think there would be any constitutional objection to the

law if it imposed upon the counties through which the road was opened the expense of opening the same.

As to the objection that the law, if it imposed the cost of constructing the road upon the counties through which it passed, would violate the rule as to the uniformity of taxation, we think it can have but little force. The fact that one county, town or city is burdened with a greater weight of taxation than another, is not a violation of the rule of uniformity. If it were, there would be no lawful tax levied in the state, as nearly every municipality raises a different amount of taxes upon the same amount of taxable property, the amount depending upon the necessities of the municipality or the will of its officers. If it be claimed that it would violate the rule of uniformity because other counties do not pay taxes for the opening of state roads, the rule of uniformity, if any, violated, would not be the uniformity of taxation, but of the system of county government.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment for the appellant.