REDEVELOPMENT AUTHORITY OF CITY OF MADISON, Plaintiff, v. CANEPA and wife, Defendants.

*June 2—June 26, 1959.*

644

For the plaintiff there was a brief by *Harold E. Hanson,* city attorney, and *Alton S. Heassler,* assistant city attorney, and *Harry G. Slater* of Milwaukee of counsel, and oral argument by *Mr. Heassler* and *Mr. Slater.*

For the defendants there were briefs by *La Follette, Sinykin, Doyle & Anderson* and *Gordon Sinykin* and *James E. Doyle,* attorneys, and *Richard E. Gordon, Maurice B. Pasch,* and *F. D. Shuttleworth* of counsel, all of Madison, and oral argument by *James E. Doyle* and *Gordon Sinykin.*

A brief was filed by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, pursuant to sec. 269.56 (11), Stats., and oral argument by the *Attorney General.*

FAIRCHILD, J. The legislature has said clearly that plaintiff is authorized to acquire private property by condemnation proceedings without submitting the question of necessity to a jury. Sec. 66.431 (5) (b), Stats., created by ch. 3, Laws of Sp. Sess. 1958. The primary issue is whether this authorization is void under sec. 2, art. XI of the constitution of Wisconsin. That section provides: "No municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury."

Defendants contend that (1) the plaintiff Redevelopment Authority is an agency of the city; (2) if it be a "state agency," sec. 66.431, Stats., would be unconstitutional because it authorizes the Redevelopment Authority to contract debts and carry on works of internal improvement which things the state is forbidden to do by secs. 4 and 10, art. VIII of the constitution; and (3) that the invalid portion of ch. 3, Laws of Sp. Sess. 1958, is inseverable from the remainder and the entire act is therefore void.

Plaintiff contends that (1) sec. 2, art. XI of the constitution applies only to cities and villages and that the Redevelopment Authority is neither the city nor an agent of

the city; (2) that the constitutional prohibitions against the contracting of state debt and carrying on works of internal improvement by the state do not apply to an agency such as the Redevelopment Authority; and (3) if the provision permitting the Redevelopment Authority to acquire private property by condemnation without a jury verdict of necessity be invalid, this provision is severable from the balance and plaintiff may properly proceed to carry out its functions.

The present problem arises from a collision between several important public needs and policies and the constitutional provision requiring the jury verdict of necessity where cities are concerned. There is a compelling need in our growing metropolitan areas for the redevelopment of some of their land so as to bring about the use of that land for purposes which fit sensibly into the present and prospective needs of the entire community. Federal funds are available in order to assist in the expensive task of redevelopment. The people of Wisconsin, as of other states, naturally desire to make good use of the available federal funds which their tax payments have helped to provide. Our cities desire to control their own affairs in the field of redevelopment, yet they are clearly subject to the requirement that any contest over the necessity of taking private land must be determined by the verdict of a jury. From the point of view of the officer or body planning redevelopment, the selection of parcels to be included in a project must be made with the thought of the project as a whole, but when the necessity of taking each parcel is submitted to a jury, with the emphasis on the point of view of the individual owner which doubtless pervades such trials, the verdict may frequently be adverse.

The National Housing Act of 1949, as amended, 42 USCA, p. 529, sec. 1441 ff., provides for the extension of financial aid for urban-renewal projects. Sec. 1455 provides that an urban-renewal plan for an urban-renewal area must be approved by the governing body of the locality in which

the project is situated and that such approval include findings by the governing body that the financial aid to be provided is necessary; that the urban-renewal plan will afford maximum opportunity consistent with sound needs of the locality as a whole for the rehabilitation or redevelopment of the urban-renewal area by private enterprise and that the urban-renewal plan conforms to a general plan for the development of the locality as a whole. In order for any state-created body to take advantage of the important federal assistance, it must be clear that such agency and its operations readily fit into the outlines of the Federal Act as interpreted by the officials charged with its administration.

Sec. 66.43, Stats., was originally enacted in 1945 and was entitled "Blighted Area Law." As amended, from time to time, it conferred upon cities a power to carry on slum clearance and redevelopment similar to the power now granted to Redevelopment Authorities like plaintiff by sec. 66.431. In *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 66 N. W. (2d) 362, this court decided that redevelopment as provided for in the Blighted Area Law was a proper public purpose for which cities might take private property by condemnation proceedings. Thus the exercise of the power of eminent domain by the city or other state-created public body to acquire land for redevelopment purposes is no longer open to question. In *State ex rel. Milwaukee v. Circuit Court* (1958), 3 Wis. (2d) 439, 88 N. W. (2d) 339, we had before us questions as to the manner of submission of the issue of necessity to a jury in condemnation proceedings under the Blighted Area Law. It was asserted to us at that time that the federal government would probably withdraw from financing the particular redevelopment project if the jury should find that there was no necessity for the taking of certain parcels included within the boundaries of the area sought to be acquired. This suggests at least that where the federal law authorizes financial assistance if certain findings

are made by the governing body of the particular locality, that law does not contemplate what amounts to a review of some of those findings with respect to particular pieces of real estate by the verdict of a jury. We were told that Wisconsin is one of only two states having a constitutional requirement of this type.

Apparently because of the difficulty caused by the constitutional requirement of a jury verdict of necessity the consideration of this problem was included within the call for the special session of the legislature in 1958. The governor called attention to the possibility that the existence of the jury-verdict requirement might result in the lapse of millions of dollars from the federal government to complete urban-renewal programs and asserted that the bill which presumably became ch. 3, Laws of Sp. Sess. 1958, "has the approval of the Milwaukee authorities and removes the objections raised by the federal authorities."

In response the legislature created sec. 66.431, Stats., entitled, "Blight Elimination and Slum Clearance Act." This act created a Redevelopment Authority in every city where certain described conditions exist. The Authority's power to commence to transact business is conditioned upon a declaration by the common council of the city of the existence of a need for blight-elimination, slum-clearance, and urban-renewal plans and projects. After such declaration the mayor is required to appoint seven resident freeholders as commissioners. The appointments are subject to confirmation by the common council by a four-fifths vote. The commissioners are required to have certain qualifications and their term of office is five years, except that at the time of the first appointment, the terms vary in length so that their expirations will be staggered. Removals may be made by the mayor for cause after notice and hearing. After the council's declaration the city is precluded from exercising the powers provided in sec. 66.43 (4) and the Authority has exclusive

power in the field of blight elimination, slum clearance, and urban renewal in that city except that a redevelopment project previously initiated by the city may be completed and operated by it. On the other hand, the Authority and the city may provide by agreement that the Authority take over a project instituted by the city. The council continues to have the power to determine that an area is a blighted area and in need of redevelopment, to approve redevelopment plans and modifications, to approve the general plans for the city, and to approve the terms of disposal of property in project areas. By the language of the statute, sec. 66.431 (3) (f), "The Authority is deemed an independent, separate, and distinct public body and a body corporate and politic." It is authorized to take title to real and personal property in its own name and, as has been said, is specifically exempted from the requirement of obtaining a jury verdict of necessity when exercising the power of eminent domain.

The Authority is empowered to prepare redevelopment and urban-renewal plans and to carry out projects within the corporate limits of the city in which it functions, to enter into contracts, and to acquire property within the boundaries of the city by purchase, lease, eminent domain, or otherwise, to borrow money and issue revenue bonds. Its obligations shall not be deemed the obligations of the city. It may sue and be sued and shall have an official seal.

While the Authority is authorized to designate the boundaries of a proposed project area, its power to proceed is dependent upon an adoption of a resolution by the council by a two-thirds vote declaring the area to be a blighted area in need of redevelopment. Its power to proceed is also subject to the approval of the council, by a two-thirds vote, of the redevelopment plan which it has prepared. An approved redevelopment plan may be amended by the Authority but the amendment will not become effective until approved by the

council by a two-thirds vote. The city is authorized to make grants and loans to the Authority. While the Authority has power to transfer or lease property, property may not be sold to a Housing Authority unless the sale is approved by the council by a four-fifths vote, and before the Authority transfers or leases any property in a project area, the Authority must report the terms of the proposed disposition to the council and the council must approve the report before the Authority proceeds with the disposition. Any lease which can run a total of more than five years must be approved by the council. Modifications of the plan after lease or sale may be made only upon approval by the council. The council is given power to approve the budget of the Authority, including the power to alter or modify any item relating to salaries, office operation, or facilities.

Defendants contend that the Authority is an agency of the city and in the course of their argument assert that if it were not so, the law would be invalid because it authorizes the Authority to do things, i.e., contract debt, and carry on works of internal improvement, which the state itself could not do. Clearly this suggestion of defendants is untenable. It has been held from almost the beginning of the state that while the state is subject to the prohibitions limiting the power of the state to contract a debt and prohibiting the carrying on of works of internal improvement, governmental units created by the state and carrying on their public functions in particular localities or geographical subdivisions of the state are not so subject. *Bushnell v. Beloit* (1860), 10 Wis. *195; *Clark v. Janesville* (1859), 10 Wis. *136; *Jensen v. Board of Supervisors* (1879), 47 Wis. 298, 2 N. W. 320.

Defendants' argument in this regard is founded upon the language of sec. 66.431, Stats., declaring the legislative purpose and the necessity of carrying out redevelopment activities by agencies which are variously referred to as "state-

created agencies" and "state agencies," and upon plaintiff's stress upon the same language in order to demonstrate that the Authority is not an agency of the city; we do not attach great significance to this particular language because in a sense all governmental bodies created under the constitution of the state, including cities and villages, could be termed "state agencies." We have no doubt that this statute would not violate the state-debt and internal-improvement provisions of the constitution even if construed so as to classify the Redevelopment Authorities as independent from the cities in which they operate.

Defendants argue that the Redevelopment Authority is an agency of the city. They do not appear to claim that plaintiff is itself a municipal corporation in the strict sense that the term is used in sec. 2, art. XI of the constitution. In any event, the meaning of "municipal corporation" in that section is restricted to cities and villages. *State ex rel. Bare v. Schinz* (1927), 194 Wis. 397, 216 N. W. 509. For a discussion of the strict and the broad senses of the term "municipal corporation" see 1 McQuillin, Mun. Corp. (3d ed.), p. 445, sec. 2.01 *et seq.*

We do not hesitate to hold that if plaintiff be an independent public corporate body, it is not a municipal corporation within the meaning of the constitutional provision requiring a jury verdict of necessity.

The real question is whether the relationship between the Authority and the city is such that the constitution requires a jury verdict in condemnation proceedings initiated by the Authority. We approach this question with diffidence because the legislature has said in the statute that the Authority is deemed an independent, separate, and distinct public body and a body corporate and politic as well as that it may condemn without submitting the question of necessity to a jury. All reasonable presumptions must be made in favor of

the legislative declaration. Is the Authority, nonetheless, a department of the city or a body which is subordinate to the city even if separate in some degree?

Defendants point to 20 elements which they assert show that the Authority is an agency of the city. They are as follows: (1) There is one Authority for each city; (2) the Authority cannot function until the city council adopts an appropriate resolution; (3) the mayor appoints the commissioners, who must be residents of the city and whose appointments must be confirmed by the council; (4) the Authority may operate only within the corporate limits of the city; (5) filing of the resolution of the council with the city clerk is made *prima facie* evidence of the Authority's right to proceed; (6) once an Authority is operating within a city, that city may not in its own name carry on blight-elimination, slum-clearance, and urban-renewal projects; (7) an Authority can take over a redevelopment project from the city without retracing the procedural steps the city has already taken; (8) employees of the Authority are eligible to participate in the pension system for employees of the city; (9) the Authority's comprehensive redevelopment plan must be consistent with the general plan of the city; (10) before the Authority can exercise its powers in a "project area," the council must declare the area blighted and must approve the redevelopment plan for the project area; (11) any changes in the redevelopment plan for the project area must have approval by the council; (12) in addition to the Authority's determination of necessity, the council's approval of the plan must occur before the Authority can proceed with acquisition of property; (13) a city may make grants, loans, advances, or contributions to the Authority operating within the city for carrying on its purposes; (14) any proposed sale or any lease for more than five years must be approved by the council; (15) the Authority must prepare and submit to the council for approval a plan assuring

the availability of other housing for residents of the project area; (16) the Authority's property is tax exempt, but the city can charge an amount in lieu of taxes if the Authority is financially able to pay; (17) the city may furnish services, facilities, or property and may otherwise co-operate with the Authority; (18) a city may borrow funds in order to aid the Authority; (19) the council controls the budget of the Authority; and (20) the city attorney is the attorney for the Authority. To this list should be added a further element, No. (21), which is that the Authority has no financial resources other than its power to borrow or accept gifts. It has no power to tax nor any power to compel the city to provide it with resources.

We have no doubt that a number of the listed elements could be true of the Authority without making it a department or a subordinate of the city. These might have been included in the statute without compelling the Authority to seek a jury verdict of necessity in its condemnation proceedings. The elements of which we think this is clearly true are those which have been numbered (1), (2), (4), (5), (6), (7), (8), (13), (16), (17), and (18).

The Authority could be limited to operation within a single city without making the Authority the agent or subordinate of the city. The legislature, having determined that an Authority should commence to function in any city where certain facts were true, could delegate to the city council the determination of those facts. Filing with the city clerk is an administrative detail. The legislature might well decree that all new projects should be carried on by an Authority and leave the choice of which would complete existing projects to the agreement of the city and the Authority. Permitting the employees of the Authority to participate in the pension fund of the city would not make the Authority an agent or subordinate of the city. Neither would permission to the city to borrow money, supply funds and the like, and otherwise

co-operate. The city's power to levy a charge in lieu of taxes is conditioned upon the ability of the Authority to pay. None of the first group of elements show that the city has either general control over the affairs of the Authority nor specific control over its decisions to take private property by condemnation.

Elements numbered (9), (15), and (20) fall into a similar group, but require special mention. With reference to elements numbered (9) and (15), we appreciate that the activities of the Authority must conform to a sound and workable community plan in order to accomplish their purpose. The fact that the Authority is required to make a comprehensive plan which is consistent with the general plan of the city and that it must demonstrate to the council that adequate substitute dwellings are available for persons displaced from a project area may be considered as means to achieve common purposes rather than as subjection of the Authority to control by the city. A requirement that the council find as a fact that any plan for a project area is consistent with the general plan of the city would not appear to render the Authority dependent upon the city.

The fact that the legislature requires (element No. (20)) that the city attorney be the attorney for the Authority would doubtless be construed as inoperative where a conflict of interest arose between the Authority and the city, but, so construed, would be a provision tending to promote administrative convenience and not make the Authority subordinate to the city.

Elements numbered (3), (14), (19), and (21) suggest that in fact the city may have general control over the Authority almost, if not quite, to as great a degree as if the Authority were a department of the city. As to No. (3), there is a difference of opinion among members of this court, some being of the opinion that the appointment of the commissioners by the mayor and confirmation by the council

would make the Authority virtually a department of the city, while the others are of the opinion that because the appointment is made for fixed terms and removals are authorized only for cause, the fact that each commissioner is initially appointed by the city government does not in itself render the Authority so dependent as to be a department, agency, or subordinate of the city. Elements (19) and (21), however, show that the city will have power to withhold all financial resources, except the money which can be borrowed, and that the city has absolute control over expenditures for salaries, office operation, or facilities. It does appear that the city has power to control the activities of the Authority to so great a degree as to deprive the Authority of independence.

Furthermore, elements numbered (10), (11), and (12) pertain specifically to the decisions which the Authority must make as a foundation for its acquisition of private property by condemnation proceedings and seem to us to determine this case in any event. A proposed project area must be declared by the council to be blighted. The redevelopment plan for the area must be approved by it. Any changes in the plan must also be approved by the council and all these steps must occur before the Authority can proceed with condemnation or other acquisition of property. Thus the Authority's determination of the necessity of taking a particular piece of private property is wholly dependent upon decisions of the city council. If the Authority decides that parcels A and B must be included in a project area, that decision is of no force without approval of the plan for that area by the council. If, after approval by the council, the Authority should conclude that either parcel A or B could properly be left out of the plan, its decision would have no force unless the council approved the change. Thus the necessity of the taking of the parcel of property is not determined independently by the Authority, but the taking is merely pro-

posed by it to the council and the council makes the ultimate decision. It seems clear to us that sec. 2, art. XI of the constitution means that a city cannot be authorized to make a final decision that private property must be taken for a public purpose without the concurrence of a jury, but the provisions before us do exactly that. Thus we conclude that the constitution requires a jury verdict of necessity in condemnation proceedings under this statute.

Two recent cases have been cited in which cities were involved in acquiring property by condemnation without the verdict of a jury, but in both these cases the real decision as to the necessity for taking property for a public use of benefit to the state was made by a department of the state and not by the city. In *Ferguson v. Kenosha* (1958), 5 Wis. (2d) 556, 93 N. W. (2d) 460, we held that the state aeronautics commission may proceed with condemnation proceedings without a jury verdict of necessity even though the land was being taken for a proposed municipal airport and the city had requested the institution of the condemnation proceeding. The statute involved granted to the commission the power to approve the airport site as a portion of the state airport system. In *State Highway Comm. v. Grant* (1959), 7 Wis. (2d) 308, 96 N. W. (2d) 346, the condemnation proceeding was brought by a city at the direction of the state highway commission, but the determination of necessity was made by the latter and the lands to be acquired were to be in the name of the state. It was held that the requirement of a jury determination of necessity did not apply. In the case before us the situation is approximately the reverse of the situations in the cases just cited. In the first case the city was eventually to acquire the property but the decision that it should be acquired was given vitality by action of a department of state government. In the second case the city was carrying out the acquisition procedure, but was doing it for

and on behalf of a department of the state which had itself determined the necessity. In the case before us, the Authority which is acquiring private property is allegedly independent from the city, but the real decision on the necessity of the acquisition is made by the city council.

We have reviewed this legislation with great care, both because of the presumption of validity which applies and because of the importance of the need in our great cities for a method of effective redevelopment of areas within them. It seems strange and an anachronism that in 1959 the legislature is prohibited from intrusting to the officers of our cities the power to take private land for public purposes similar to the power which the legislature is permitted to give to the officers of privately owned utility corporations as well as the officers of numerous governmental bodies other than cities and villages. Nevertheless, as noted in *State ex rel. Milwaukee v. Circuit Court, supra,* page 444, as recently as 1948 a proposed amendment to the constitution which would have eliminated the jury-verdict requirement was defeated at a general election by a vote of 807,318 to 210,086. If it be true that the federal assistance, which is essential to great progress in the field of redevelopment and urban renewal, cannot be made available as long as the inclusion of particular parcels of land is subject to a jury verdict, and if it is not considered feasible to assign the task of urban renewal and redevelopment to any unit of government other than a city or an agency subordinate to the control of the city, then we are in a stalemate where it is impossible to have substantial progress in this field as long as sec. 2, art. XI of the constitution remains in its present form.

Defendants finally urged that if, as we have concluded, the provision for exemption of the authority from the jury-verdict requirement is invalid, ch. 3, Laws of Sp. Sess. 1958, was so clearly intended for that purpose alone that we must consider that the presumption of severability is overcome

and must hold the entire law invalid. We do not agree. The presumption of severability is created by sec. 990.001 (11), Stats. This court has said that, "While this declaration of legislative policy [severability] is not absolutely controlling upon the court, it will not be ignored except in a case where it clearly appears that the remainder of the act is dependent on the part held invalid." *J. C. Penney Co. v. Tax Comm.* (1940), 233 Wis. 286, 298, 289 N. W. 677. While it is quite clear that one important purpose of the enactment of ch. 3 was to permit urban-redevelopment projects to proceed without the requirement of the jury verdict of necessity, we cannot say that the remainder of the act is not a " 'living, complete law capable of being carried into effect "consistent with the intention of the legislature which enacted it in connection with the void part." ' " *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 198, 277 N. W. 278, 280 N. W. 698.

Viewing ch. 3, Laws of Sp. Sess. 1958, without the provisions which exempt the Authority from obtaining a jury verdict of necessity, it does provide for certain administrative changes in the carrying out of urban redevelopment in a city. Plaintiff may carry out condemnation proceedings following the same procedure as is prescribed for the city. In view of the statutory presumption of severability we conclude that our determination of the invalidity of portions of the statute does not establish the invalidity of the act as a whole.

*By the Court.*—It is declared and adjudged that the portions of ch. 3, Laws of Sp. Sess. 1958, which exempt a Redevelopment Authority from the requirement of obtaining a jury verdict of necessity in condemnation proceedings are invalid, but that the invalidity of those portions does not render the chapter wholly void. Defendants to have costs.

MARTIN, C. J., took no part.