STATE EX REL. LA FOLLETTE, Attorney General, Petitioner, v. REUTER, Director of Finance, Respondent.

*September 11—October 3, 1967.*

101

104

105

106

107

For the petitioner the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Van Alstyne, Hoffman & Feifarek* of Madison, and oral argument by *A. J. Feifarek.*

HANSEN, J.  The attorney general seeks a peremptory writ of mandamus to compel the respondent to honor a $75.64 voucher and requisition. We deem the prayer for declaratory judgment on the questions raised of constitutionality to be determinative of all issues to be considered by this court.

The issues are as follows:

(1) Do secs. 84.40–84.42, Stats., constitute classification prohibited by art. I, sec. 1, Wisconsin constitution, and do they deny equal protection of the law to the citizenry of Wisconsin?

(2) Does sec. 84.42, Stats., violate art. IV, sec. 31, Wisconsin constitution, in that it constitutes a special or private law?

(3) Does sec. 84.40, Stats., violate art. VIII, sec. 2, Wisconsin constitution, in that it authorizes payment of state funds for purposes that do not pertain to matters of statewide public interest or public purpose?

(4) Do secs. 84.40 and 84.41, Stats., violate art. VIII, sec. 3, Wisconsin constitution, in that they give or lend credit of the state?

(5) Do secs. 84.40 and 84.41, Stats., violate art. VIII, sec. 4, or art. VIII, sec. 10, Wisconsin constitution, in that they authorize the creation of a public debt, or in that they provide for expenditure of public moneys on private highways?

*First issue—Does the act constitute classification prohibited by the constitution, and does it deny equal protection of the law to the citizenry of Wisconsin?*

It has long been established that there is a basic and strong presumption supporting the constitutionality of any classification made by the legislature. This principle is well enunciated in *Servonitz v. State* (1907), 133 Wis. 231, 239, 113 N. W. 277:

"In considering the subject we must bear in mind that the policy of classification is a matter wholly within legislative discretion, and that whether there is room for the classification made in any given case is primarily a legislative question and can never become a judicial one except for the purpose of determining, in any given situation, whether legislative action passed the boundaries of reason, reasonable doubts to be resolved in the negative."

This court further considered the matter of legislative classification in *Kiley v. Chicago, M. & St. P. Ry.* (1910), 142 Wis. 154, 159, 125 N. W. 464:

"As to the provision exempting shop and office employees from the operations of the act, a different question arises. This is undoubtedly classification, or rather subclassification, of employees. Subclassification of a class is entirely permissible, but, like all other classification, it must be based upon real distinctions germane to the purpose of the law and suggesting at least the propriety of substantial difference in legislation. On the other hand, the question whether there is room or necessity for classification is one resting primarily with the legislature, *and no court is justified in declaring classification baseless unless it can say without doubt that no one could reasonably conclude that there is any substantial difference justifying different legislative treatment. State v. Evans,* 130 Wis. 381, 110 N. W. 241; *Servonitz v. State,* 133 Wis. 231, 113 N. W. 277. Nor is classification to be condemned by the courts because the situation of certain individuals in one class may not differ materially from the situation of certain individuals in another class. Such is frequently the case. It is the class, considered broadly as a class, which must possess the distinguishing differences of situation calling for differ-

ent legislation, not every individual in the class." (Emphasis added.)

Later certain standards were enumerated in *State ex rel. Ford Hopkins Co. v. Mayor* (1937), 226 Wis. 215, 222, 276 N. W. 311. These standards are as follows:

"(1) All classification must be based upon substantial distinctions which make one class really different from another.

"(2) The classification adopted must be germane to the purpose of the law.

"(3) The classification must not be based upon existing circumstances only.

"(4) To whatever class a law may apply, it must apply equally to each member thereof.

"*Johnson v. Milwaukee,* 88 Wis. 383, 390, 60 N. W. 270.

"In *State ex rel. Risch v. Trustees,* 121 Wis. 44, 54, 98 N. W. 954, 957, the same general rules are held essential for a constitutional classification, with the following addition to No. (3):

"'It must not be so constituted as to preclude addition to the numbers included within a class.'

"And by adding a fifth rule, as follows:

"'(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.'"

Respondent urges that sec. 84.42, Stats., is constitutionally violative to all five standards set forth in *Ford Hopkins, supra.* We do not agree with this contention. As recently as *State ex rel. Sonneborn v. Sylvester* (1965), 26 Wis. 2d 43, 132 N. W. 2d 249, it was held that art. I, sec. 1, Wisconsin constitution, is the equivalent of the equal-protection clause of the fourteenth amendment of the United States constitution, and that generally they are considered to apply to laws and ordinances that regulate persons or businesses. The standard of reasonableness referred to in *Ford Hopkins, supra; Servonitz v. State, supra; Kiley v. Chicago, M. & St. P. Ry.,*

*supra;* is to be utilized in conjunction with the basic requirements for classification. Thus when the presumption of constitutional validity is combined with the standards of classification, it follows that the presumption is superimposed upon the standards so that to declare an act of the legislature as to a classification violative of the equal-protection clause, it is first necessary to prove that the legislature has abused its discretion beyond a reasonable doubt.

In *State ex rel. Baer v. Milwaukee* (1967), 33 Wis. 2d 624, 633, 148 N. W. 2d 21 (considering a city ordinance case), this court referred to the standards of classification as promulgated in *Ford Hopkins, supra,* and stated:

"Before appellant can avail himself of these rules to challenge any distinctions among classes of recreation or classes of pool halls, he again must overcome a presumption that the classifications are reasonable and proper. . . ."

The strong presumption as to the validity of the classification has not been overcome and the statutes do not violate art. I, sec. 1, of the Wisconsin constitution.

*Second issue—Do these statutes violate art. IV, sec. 31, of the Wisconsin constitution, in that they constitute a special or a private law?*

Art. IV, sec. 31, Wisconsin constitution, provides:

"The legislature is prohibited from enacting any special or private laws in the following cases.
" . . .
"2d. For laying out, opening or altering highways, except in cases of state roads extending into more than one county, and military roads to aid in the construction of which lands may be granted by congress."

Since its creation in 1871, and its amendment in 1892, art. IV, sec. 31, has been applied to a wide and divergent variety of cases. The sweeping gamut of this section has inevitably resulted in a construction of what is

meant by "special or private legislation" on a case-by-case and act-by-act analysis. Consequently, the historical objectives and purposes of this section are important because, necessity has demanded the evaluation of many different acts and policies during the development of the state.

*Kimball v. Rosendale* (1877), 42 Wis. 407, 415, discussed the original constitutional amendment of 1871 which became art. IV, sec. 31, of our constitution:

"It is impossible to mistake the object or spirit of this amendment. For years, the statute books had been encumbered with multitudinous acts of the several kinds prohibited; vicious not only in quantity but in quality. In some of the instances prohibited, they meddled in purely private matters; authorizing what might be done without the authority or with judicial authority. In other instances, they conferred special authority in cases within general authority. And in all instances relating to things *publici juris,* they broke the uniformity and harmony of law so essential to good government; substituting special for general rules, and rendering a large body of the municipal law fragmentary in character, and different by locality. After long endurance of such excesses of legislation, the amendment of 1871 was adopted; in order, so far as it went, to confine legislation to its legitimate objects, to substitute general for special enactments, and to restore order and uniformity to municipal law. And we cannot doubt that, except so far as power over any of the nine several subjects is reserved by other provisions of the constitution, the amendment was intended to withdraw them, and does effectually withdraw them, from any exercise of legislative authority over them, by private or special statutes. . . ."

In determining the constitutionality of a particular statute, as it relates to this section of the constitution, the courts have been motivated by such polar factors as curing the abuses which prompted the original 1871 amendment and the overwhelming desirability of the particular statute then under consideration.

Furthermore, this court has repeatedly held that repugnance between a legislative act and the express provisions of the constitution must be clear and irreconcilable before a statute will be held invalid. See *Madison Metropolitan Sewerage Dist. v. Committee* (1951), 260 Wis. 229, 50 N. W. 2d 424.

The purpose of this constitutional provision is to insure that legislation will promote the general welfare and further statewide interests, as opposed to private concerns. Traffic safety, in this age of the automobile, is but one aspect of general welfare and statewide interests involved in the enactment of the legislation here under consideration. Several statutes in other jurisdictions relating to accelerated interstate highway programs have been determined to be of statewide interest and to promote the general welfare of the state and, therefore, not objectionable as either "special or private laws." *Dearborn v. Turnpike Authority* (1955), 344 Mich. 37, 73 N. W. 2d 544; *Application of Oklahoma Turnpike Authority* (1950), 203 Okla. 335, 221 Pac. 2d 795. *See also Lamasco Realty Co. v. Milwaukee* (1943), 242 Wis. 357, 8 N. W. 2d 372, 8 N. W. 2d 865; *Columbia County v. Wisconsin Retirement Fund* (1962), 17 Wis. 2d 310, 321–324, 116 N. W. 2d 142.

Secs. 84.40 to 84.42, Stats., do not violate the constitutional prohibition against special or private legislation.

*Third issue—Does sec. 84.40, Stats., violate art. VIII, sec. 2, Wisconsin constitution, in that it authorizes payment of state funds for purposes that do not pertain to matters of statewide public interest or public purpose?*

Art. VIII, sec. 2, Wisconsin constitution, provides:

"No money shall be paid out of the treasury except in pursuance of an appropriation by law. No appropriation shall be made for the payment of any claim against the state except claims of the United States and judgments, unless filed within six years after the claim accrued."

Respondent submits that sec. 84.40, Stats., and, in particular, sec. 84.40 (2) (c) which provides in part as follows:

". . . With respect to any property conveyed to such corporation under par. (a), such lease from such corporation may be subject or subordinated to one or more mortgages of such property granted by such corporation."

violates art. VIII, sec. 2, Wisconsin constitution.

Both parties concede that it is a well-established principle of law in Wisconsin that public funds may be expended only for public purposes, and that an expenditure of such funds for a private purpose is unconstitutional. *State ex rel. Larson v. Giessel* (1954), 266 Wis. 547, 551, 552, 64 N. W. 2d 421.

The rule for determining the public purpose for expenditure of public funds is set forth in *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 207, 215, 216, 60 N. W. 2d 763:

"The general rule as to the public purpose of the expenditure of public funds is stated in 81 C. J. S., States, p. 1149, sec. 133, as follows:

" 'Generally, in connection with the validity of the expenditure of state funds, what is . . . a public purpose, is a question for the legislature to decide, with respect to which it is vested with a large discretion, which cannot be controlled by the courts unless its action is clearly evasive . . . . Where a doubt exists whether the purpose of an appropriation is public or private, it will be resolved in favor of the validity of the appropriation, . . .' "

The *Thomson Case* (1953), *supra*, at page 216, cited with approval, *Carmichael v. Southern Coal & Coke Co.* (1937), 301 U. S. 495, 57 Sup. Ct. 868, 81 L. Ed. 1245, which states:

" '. . . The existence of *local conditions* which, because of their nature and extent, are of concern to the

public as a whole, *the modes of advancing the public interest* by correcting them or avoiding their consequences, *are peculiarly within the knowledge of the legislature,* and to it, and not to the courts, is committed the duty and responsibility of making choice of the possible methods. [Citations.] As with expenditures for the general welfare of the United States [Citations], *whether the present expenditure serves a public purpose is a practical question addressed to the lawmaking department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court.* [Citations.]' "

Respondent contends that should the state default in payments to be made under any of the various operating agreements authorized by the act, that the public could possibly be deprived of the use of at least a portion of the interstate highway system. Sec. 84.40 (2) (c), Stats., provides that such payments shall be "subject to available appropriations."

By the enactment of ch. 593, Laws of 1965, the legislature authorized the state highway commission to sell, convey or lease to a specified nonprofit corporation, certain public rights of way and existing highways which are available for highway purposes. The expressed purpose of this legislation and the accompanying authorization is to provide new highways, improve existing highways, and to enable the construction and financing of these endeavors.

By this action the state, as owner, intended to and did dedicate these rights of way and existing highways to the public in order to effect and finance new highways and improvements on existing highways.

"The essential requisites of a valid common-law dedication are that there must be an intent to dedicate on the part of the owner and an acceptance of the dedication by the proper public authorities or by general public user." *Knox v. Roehl* (1913), 153 Wis. 239, 243, 140 N. W. 1121; *Galewski v. Noe* (1954), 266 Wis. 7, 62 N. W. 2d 703.

Dedication of real estate to public use, or offers thereof, need not be in writing or in any particular form. *Galewski v. Noe, supra*. Also, when the state, by authority of law, dedicates public land to public use, the same high public authority that makes dedication, by the same act accepts it on behalf of the public. The dedication and acceptance are in the same public act. *Reilly v. Racine* (1881), 51 Wis. 526, 529, 8 N. W. 417; *Jefferson v. Eiffler* (1962), 16 Wis. 2d 123, 130, 113 N. W. 2d 834.

Obstruction of dedicated public property cannot be accomplished, unless the public unequivocally vacates or abandons use of the dedicated land.

"Property dedicated to the public use cannot be seized or sold for debts of any person or corporation. This is true of both common law and statutory dedications." 26 C. J. S., *Dedication,* p. 542, sec. 57.

The provisions of art. VIII, sec. 2, Wisconsin constitution, are not violated.

*Fourth issue—Does sec. 84.40, Stats., violate art. VIII, sec. 3, Wisconsin constitution, in that it gives or lends credit of the state?*

The constitutionality of the use of nonprofit corporations by the state in development of financing plans has long been recognized by this court. Cases approving this method of financing commence with *Loomis v. Callahan* (1928), 196 Wis. 518, 220 N. W. 816, and extend to the most recent case of *State ex rel. La Follette v. Reuter* (1967), 33 Wis. 2d 384, 147 N. W. 2d 304.

Sec. 84.40 (2) (g), Stats., provides that any payments to be made by the state are "subject to available appropriations." The question is whether or not this language constitutes the giving or lending of the credit of the state.

Respondent, in essence, urges this court to adopt a new test for determining whether the state is giving or lending its credit. He urges the acceptance of a dictionary-

derived definition of the word "credit" rather than the legal one heretofore established by this court. To accept such a definition would require the overruling of many cases running from *Loomis v. Callahan* (1928), *supra,* through *La Follette v. Reuter* (1967), *supra.*

In *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 197, 277 N. W. 278, 280 N. W. 698, the court precisely alluded to the giving or loaning of the credit of the state in the following language:

"It is our conclusion that the giving or loaning of the credit of the state which it was intended to prohibit by sec. 3, art. VIII, Wis. Const., occurs only when such giving or loaning results in the creation by the state of a *legally enforceable obligation* on its part to pay to one party an obligation incurred or to be incurred in favor of that party by another party. . . ." (Emphasis added.)

This standard of a "legally enforceable obligation" has been affirmed and adopted in several cases specifically involving nonprofit corporations. *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 199, 60 N. W. 2d 873; *State ex rel. La Follette v. Reuter* (1967), 33 Wis. 2d 384, 147 N. W. 2d 304.

Therefore, we conclude that provisions of the act do not constitute the giving or lending of the credit of the state as heretofore defined and established.

*Fifth issue—Do secs. 84.40 and 84.41, Stats., violate art. VIII, sec. 4, or art. VIII, sec. 10, Wisconsin constitution, in that they authorize the creation of a public debt, or in that they provide for expenditure of public moneys on private highways?*

Art. VIII, sec. 4, Wisconsin constitution, provides:

"The state shall never contract any public debt except in the cases and manner herein provided."

Art. VIII, sec. 10, Wisconsin constitution, generally prohibits the state from being a party to carrying on

works of internal improvement and from contracting any debt in regard to such improvement. In 1908, art. VIII, sec. 10, was amended to provide that the state may appropriate money in the treasury or to be thereafter raised by taxation for the construction or improvement of public highways.

The respondent contends that under art. VIII, sec. 10, the state could construct highways as a matter of internal improvement, but could not incur debt in so doing. We conclude that the debt provisions of art. VIII, sec. 10, are not applicable to the instant case. It has been frequently held that the internal improvement provision applies only to works engaged in by the state and does not apply to activities carried on by a governmental subdivision of the state. *State ex rel. Bowman v. Barczak* (1967), 34 Wis. 2d 57, 73, 148 N. W. 2d 683; *Redevelopment Authority v. Canepa* (1959), 7 Wis. 2d 643, 651, 97 N. W. 2d 695; *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 206, 60 N. W. 2d 873.

In the case under consideration, the nonprofit corporation is the direct participant in the transactions authorized by the statute in question, thereby removing the state from direct involvement. In *Redevelopment Authority v. Canepa, supra,* it was held (p. 651) :

". . . It has been held from almost the beginning of the state that while the state is subject to the prohibitions limiting the power of the state to contract a debt and prohibiting the carrying on of works of internal improvement, governmental units created by the state and carrying on their public functions in particular localities or geographical subdivisions of the state are not so subject. *Bushnell v. Beloit* (1860), 10 Wis. *195; *Clark v. Janesville* (1859), 10 Wis. *136; *Jensen v. Board of Supervisors* (1879), 47 Wis. 298, 2 N. W. 320."

Though we hold that the statutes involved do not violate art. VIII, sec. 10, it is further contended that they do violate art. VIII, sec. 4.

This court has held that the constitutional debt provision of art. VIII, sec. 4, is not violated by leasing or rental agreements entered into by the state or a subdivision thereof provided that the contract: (1) Is subject to available appropriations; and (2) pertains to discharge of a state governmental function. *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. 2d 577; *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 65 N. W. 2d 529.

The respondent submits that although the statutes in question contain a "subject to available appropriation" clause, they relate to an internal improvement rather than the discharge of a state governmental function.

While it may be said that art. VIII, sec. 10, includes highways within the scope of internal improvements, we can not agree that the classification of highways as an internal improvement necessarily precludes them from also being a proper governmental function.

In *State ex rel. Thomson v. Giessel* (1954), 267 Wis. 331, 343, 65 N. W. 2d 529, this court approved the use of the Minnesota definition of internal improvements which had previously been adopted in *State ex rel. Owen v. Donald* (1915), 160 Wis. 21, 79, 151 N. W. 331. In these cases the court has identified the performance of certain governmental functions as not constituting internal improvements. However, the specific question of construction and maintenance of highways has not been considered. In reviewing cases previously considered by this court, it has not been held that any internal improvement cannot also be a legitimate governmental function, nor has this court held that the terms "internal improvement" and "governmental function" are mutually exclusive.

In 1925, this court took judicial notice of the fact that by 1905 it was generally realized that in order to utilize the automobile to its fullest extent, the constitu-

tional prohibition which stood in its way, in the form of art. VIII, sec. 10, as it then existed, required amendment. This amendment, which was accomplished in 1908, was motivated by the advent of the automobile and by the desire of the people to use it to the highest degree. *State ex rel. Ekern v. Zimmerman* (1925), 187 Wis. 180, 186, 204 N. W. 803.

We, therefore, conclude that the purpose of the amendment was not only to exempt highways as a permissible internal improvement but, more importantly, to deem their construction as a proper governmental function. The statutes we here consider do not violate the debt provision of art. VIII, sec. 4, Wisconsin constitution.

### Conclusion.

The legislature, within its province, has determined that authorizing the commission to enter into certain agreements, under the terms and conditions prescribed in the statutes here considered, are essential to the construction and maintenance of the accelerated interstate highway program. We know of no authority and can find no reason to justify a finding by this court that ch. 593, Laws of 1965, and the statutes thereby created, are unconstitutional. The search must be for a means of sustaining this act, not for reasons which might require its condemnation. *State ex rel. Thomson v. Giessel* (1953), *supra.*

Also, where there are two possible constructions of the law, one under which the law would be violative of the constitution, and another under which it would not be, that construction which would save the law must be adopted. *Petition of Breidenbach* (1934), 214 Wis. 54, 252 N. W. 366.

We hold that the provisions of ch. 593, Laws of 1965, pertaining to the financing of an accelerated interstate

highway program are valid legislative enactments, and not in violation of the constitution of the state of Wisconsin, and that Clarence A. Reuter, as director of finance, is required and has the right to honor, audit, and approve any and all requisitions, purchase orders and other proper requests issued to him by the state highway commission, pursuant to said statute, and to give effect to and take all steps necessary and required of him to carry out the aforesaid provisions of ch. 593, Laws of 1965.

*By the Court.*—The petition for a peremptory writ of mandamus is granted; and a declaratory judgment granted adjudging that sec. 12, ch. 593, Laws of 1965, which creates secs. 84.40 to 84.42, Stats., is a valid enactment.

HALLOWS, J. (*dissenting*). While the proposed plan for the acceleration and completion of the interstate highway system has a laudable public purpose, the end does not justify the means adopted. The leasing or sale of part of a public highway to a dummy corporation to effectuate financing and secure available federal funds to complete it goes far beyond any scheme involving dummy corporations which this court has previously held to be constitutional. By this device for all practical purposes the debt limitation of the constitution is avoided and a long-term debt created contrary to art. VIII, secs. 4 and 10. The plan extends the hands of Esau but speaks with the voice of Jacob.